James W. HELTON, II, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A01–9305–CR–178.

Court of Appeals of Indiana, First District.

Dec. 1, 1993.

William Van Der Pol, Jr., McNutt, Hurt & Blue, Martinsville, for appellant-defendant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Today we decide whether Indiana's Criminal Gang Activity Statute is constitutional under the United States and Indiana Constitutions.

Appellant-defendant James W. Helton, II, appeals his conviction for Participating in Criminal Gang Activity, a Class D felony.[1]

1. IND.CODE 35–45–9–3 (1993).

*ISSUES*

Helton raises several issues for our review:

I. Whether Indiana's Criminal Gang Activity Statute (Gang Statute) is unconstitutional because:

 A. It is void for vagueness under the First and Fourteenth Amendments to the U.S. Constitution and article 1, § 9 and § 31 of the Indiana Constitution.

 B. It is unconstitutionally overbroad and impermissibly infringed upon Helton's right of association guaranteed under the First and Fourteenth Amendments to the U.S. Constitution and article 1, § 9 and § 31 of the Indiana Constitution.

 C. It deprived Helton of equal protection of the laws as guaranteed under the Fourteenth Amendment to the U.S. Constitution, and article 1, § 23 of the Indiana Constitution.

II. Whether the trial court erred in allowing a police officer to testify as to the history of the Imperial Gangster Disciples under the pedigree exception to the rule against hearsay.

III. Whether the Gang Statute applies to Helton's conduct.

*FACTS*

The undisputed facts[2] are that James Helton, a sixteen-year-old white male also know as G–Dog, is a member of the Imperial Gangster Disciples (IGD), a twelve member youth group.[3] In October 1991, while Helton was second in command or the number two G, he and other members initiated Scott Bullington into IGD. IGD members perform the initiation ritual, called "a 46," by striking the initiate forty times in the head and six times in the chest while standing in a circle around an ironing board with a blue bandanna, a candle, and a handgun placed on top.

In February 1992, twelve to fourteen IGD members met to initiate Travis Hammons. Helton and two other IGD members initiated Hammons after number one G Charlie Moran recited the traditional initiation "prayer."[4] While four IGD members restrained Hammons, Helton delivered 20 bare-fisted, hard blows directly to Hammons' head while pronouncing "he was going to beat [Hammons'] ass into the ground."[5] Record at 218. Both Bullington and Hammons knew of the initiation rite and consented to "a 46" by Helton and other members in order to become IGD members themselves.

At Hammons' initiation, IGD members also discussed the need to travel in pairs, to be aggressive with others, to never back away from anyone or a fight, determined that anyone who missed an IGD meeting would "get violated" (receive six blows to the chest), and decided that anyone leaving IGD would be "eight-balled" (surrounded by eight members and then beaten by them).

On April 23, 1992, the Morgan County court waived juvenile jurisdiction over then fifteen-year-old Helton, to the Morgan Superior Court. On April 24, 1992, the State charged Helton by information with participating in a criminal gang. The State later amended the information to charge Helton with participating in criminal gang activity on or about February 12, 1992, for committing a battery on Hammons. Helton was released on bond. While on release, Helton threatened a witness for the State and was suspended from high school for fighting

---

**2.** At the November 9, 1993 oral argument held in Bloomington, Indiana, the parties agreed that the facts were not in dispute.

**3.** IGD member Biff Kinnick testified that IGD stands for Insane Gangster Disciples. Record at 233. This may be a more appropriate name; however, all other IGD members who testified stated that IGD stands for Imperial Gangster Disciples. The IGD gang colors are black and blue.

**4.** At initiations, IGD members circle around an ironing board while a leader recites the IGD "prayer." Record at 221–22, 236. The "prayer" is: "Let it rain, let it pour, let a G [IGD member] kill a Lord [Vice–Lord, another gang]." Record at 222.

**5.** Helton and another member held the gun briefly during the initiation, however, it remained on the ironing board most of the time.

with two persons. The court then placed special conditions on Helton's bond, including the condition that Helton not contact any of the fourteen persons concerned directly or indirectly until the matter was concluded.

Helton waived his right to a jury trial, and on January 21, 1993, the trial court determined the Gang Statute was constitutional and found Helton guilty of criminal gang activity. The trial court sentenced Helton to three years imprisonment, suspended so long as he complied with the terms of his probation. Helton now appeals.

## DECISION AND DISCUSSION

### I. Constitutionality

■ In considering constitutional challenges, we accord the statute with every reasonable presumption supporting its validity and place the burden upon the party challenging it to show unconstitutionality. *Brady v. State* (1991), Ind., 575 N.E.2d 981, 984. To be constitutional, a statute must be carefully drafted or be authoritatively construed to punish only constitutionally unprotected conduct. *Waldron v. McAtee*, 723 F.2d 1348, 1354 (7th Cir.1983). We will assign a constitutional meaning to a statute if we can do so while remaining faithful to the legislative purpose. *Price v. State*,

(1993), Ind., 622 N.E.2d 954. The language of a judicial opinion is as good as the language of the statute construed in the opinion. *Waldron*, at 1354.

### A. Vagueness

Helton first contends the Gang Statute is void under the First[6] and Fourteenth[7] Amendments to the U.S. Constitution and article 1, § 9 of the Indiana Constitution[8] because it is unconstitutionally vague. We will address Helton's contentions under each constitution together since state and federal vagueness analysis is the same.

■ As a preliminary matter, we note that the First Amendment's command that Congress shall make no law abridging the freedom of speech or the right of the people to peaceably assemble has been incorporated into the Fourteenth Amendment and as such applies to all States. *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Secondly, the right to peaceably assemble is found in article 1, § 31 of the Indiana Constitution.[9]

■ Under basic principles of due process, a law is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972).[10] A statute is not void for vague-

---

**6.** The First Amendment to the U.S. Constitution states: "Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble...."

**7.** § 1 of the Fourteenth Amendment to the U.S. Constitution states:
"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**8.** Article 1, § 9 of the Indiana Constitution states:
No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the

abuse of that right, every person shall be responsible.

**9.** Article 1, § 31 of the Indiana Constitution states:
No law shall restrain any of the inhabitants of the State from assembling together in a peaceable manner, to consult for their common good; nor from instructing their representatives; nor from applying to the General Assembly for redress of grievances.

**10.** Vague laws offend three important values: (1) the requirement that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, (2) by not providing explicit standards for those who apply them, vague laws lead to arbitrary and discriminatory enforcement and impermissibly delegate basic policy matters to police, judges and juries for resolution on an ad hoc basis, and (3) where a vague statute impinges upon sensitive areas of basic First Amendment freedoms, it inhibits the exercise of those freedoms. *Grayned*, at 108–09, 92 S.Ct. at 2298–99.

ness if individuals of ordinary intelligence would comprehend it to fairly inform them of the generally proscribed conduct. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *State v. Downey* (1985), Ind., 476 N.E.2d 121, 122; *Mallory v. State* (1990), Ind.App., 563 N.E.2d 640, 644–45, *trans. denied.* Statutes which threaten to inhibit the exercise of constitutional rights or which impose criminal penalties are subjected to greater scrutiny and less vagueness is tolerated in them than in other types of laws. *Government Suppliers Consolidating Services v. Bayh,* 734 F.Supp. 853, 868 (S.D.Ind.1990). However, the act of associating with compatriots in crime is not a protected associational right. *United States v. Choate,* 576 F.2d 165, 181 (9th Cir.1978), *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978); *Indiana Bell Telephone Co. v. Indiana* (1980), Ind., 402 N.E.2d 962, 965.

■ Specifically, Helton claims the statutory language is ambiguous and leaves persons of average intelligence without any indication as to what conduct is prohibited. Helton does not articulate what is unclear, vague, or ambiguous in the Gang Statute, and we find no such shortcomings.

The Gang Statute provides: "A person who knowingly or intentionally actively participates in a criminal gang commits criminal gang activity, a Class D felony." A "criminal gang" is defined in I.C. 35–45–9–1 as:

> ... a group with at least five (5) members that specifically:
> (1) either:
> (A) promotes, sponsors, or assists in; or
> (B) participates in; and
> (2) requires as a condition of membership or continued membership;
> the commission of a felony or an act that would be a felony if committed by an adult or the offense of battery (IC 35–42–2–1).

■ When reviewing a statute, we examine it in its entirety, interpreting words based upon their ordinary and plain meaning and not overemphasizing particu-

lar words. *Spaulding v. International Bakers Services, Inc.* (1990), Ind., 550 N.E.2d 307, 309. When interpreting statutes, we reconcile them with each other whenever possible. *Matter of Public Law No. 154–1990* (1990), Ind., 561 N.E.2d 791, 792; *Benham v. State,* (1993), Ind., 622 N.E.2d 982.

The Gang Statute clearly forbids a person from knowingly and actively participating in a group with five or more members which participates in and requires as a condition of membership the commission of a battery. When Helton beat Hammons, he actively participated in the IGD gang with knowledge that the IGD gang participates in and requires as a condition of membership the commission of a battery. Helton's conduct is clearly proscribed by the Gang Statute.

Helton also argues the Gang Statute is vague because it did not warn him that his conduct of striking a consenting victim constituted a battery under the Gang Statute. We disagree.

■ A battery is committed when "[a] person ... knowingly or intentionally touches another person in a rude, insolent, or angry manner ..." IND.CODE 35–42–2–1(a). Lack of consent is not a statutory element of the offense of battery in Indiana. Moreover, our supreme court has expressly held that the victim's consent is not a defense to the charge of battery in certain circumstances. *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 17–18. Therefore, Helton had fair warning that the Gang Statute prohibited gang members from committing batteries on any person, whether they are consenting or nonconsenting participants.

■ Additionally, Helton claims the Gang Statute is void for vagueness because it vests unfettered discretion in the prosecutor allowing him to enforce it in an arbitrary and discriminatory manner to punish groups he alone deems undesirable.

■ A statute is also void for vagueness if its terms invite arbitrary or discriminatory enforcement. *Kolender v. Law-*

*son,* 461 U.S. 352, 356–58, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983); *Price,* 622 N.E.2d at 967. However, no statute need avoid all vagueness. *Grayned,* 408 U.S. at 110, 92 S.Ct. at 2300. Because statutes are condemned to the use of words, there will always be uncertainties for we cannot expect mathematical certainty from our language. *Id.*

Obviously, the decision to prosecute for any type of criminal activity must reside somewhere. *Miller v. State,* (1993), Ind., 623 N.E.2d 403. The prosecutor's decision to prosecute does not determine the final outcome. *Id.* at 412. Moreover, courts have repeatedly held this type of procedure constitutional. *Id.; see also Coleman v. State* (1990), Ind., 558 N.E.2d 1059, 1069, *cert. denied,* —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 94, *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). Enforcement of laws always requires some degree of judgment on behalf of police and prosecutors, but, as confined, that degree of judgment is permissible here. *See Grayned,* 408 U.S. at 114, 92 S.Ct. at 2302 (ordinance forbidding deliberately noisy or diversionary activity that disrupts or is about to disrupt school not vague).

Furthermore, undesirable groups, the wrong type of crowd, or annoying conduct alone is not punishable under the Gang Statute. The Gang Statute does not permit five or more persons to associate only at the whim of a police officer or the prosecutor. *See id.* Rather the group must be one which both promotes, sponsors, assists in, or participates, and requires as a condition of membership the commission of a felony or battery and the person must actively participate in the group, with knowledge of the group's criminal conduct and a specific purpose to facilitate the group's criminal conduct before the prosecutor may charge the person with participating in criminal gang activity.

The Gang Statute gives persons of ordinary intelligence fair warning of the proscribed, unprotected conduct and is thus not unconstitutionally vague.

### B. Overbreadth

Helton also contends that the Gang Statute may conceivably interfere with the free exercise of others' First Amendment rights and legally permissible conduct such as contact sports.

### 1. Indiana's Constitution

 Our supreme court recently held that there is no overbreadth analysis in Indiana's constitution and that federal overbreadth analysis does not apply in Indiana constitutional jurisprudence. *Price,* 622 N.E.2d, at 957. Unless the statute in issue is incapable of constitutional application, the court should limit itself to vindicating the rights of the party before it.[11] *Id.,* at 958. Thus, once an Indiana constitutional challenge is properly raised, the court should first determine whether the statute is capable of constitutional application and then determine whether its application in the case was constitutional, refraining from speculating about hypothetical applications. *Id.*

 Since Indiana's Gang Statute is not incapable of constitutional application (*See Issue I.A.*), we pass over Helton's contention that the Gang Statute is overbroad under the Indiana constitution and turn instead to whether its application in this case was constitutional.

 Helton was charged with criminal gang activity for committing a battery on Hammons and intentionally and actively participating in the IGD gang which promotes and requires as a condition of membership the commission of a battery. The IGD gang requires its members to routinely assist in the commission of batteries upon persons who cause trouble for the gang, miss a meeting, join, or leave the

---

**11.** This is a self-imposed restriction similar to that imposed in article III of the U.S. Constitution. *Price,,* at 958 (Ind. Nov. 1, 1993). The restriction preserves the function of the state judiciary and the special aptitude of courts to decide concrete controversies between interested parties. *Id.*

gang. Indiana and federal constitutional protections of free speech and free association do not provide protection for associations made in furtherance of [crimes] or criminal conspiracy. *Indiana Bell*, at 965. Moreover, the act of associating with compatriots in crime is not a protected associational right. *Choate*, at 181; *Indiana Bell*, at 965. Application of the Gang Statute to Helton's conduct was constitutional under Indiana law.

### 2. Federal Constitution Analysis

■ The failure of Helton's vagueness challenge does not invalidate his overbreadth challenge under the U.S. Constitution. *Gooding v. Wilson*, 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972); *Van Sant v. State* (1988), Ind.App., 523 N.E.2d 229, 233. A statute must be carefully drawn or authoritatively construed to punish only unprotected conduct and not be susceptible of application to protected expression. *Gooding*, 405 U.S. at 522, 92 S.Ct. at 1106. A clear and precise penal statute may nevertheless be unconstitutionally overbroad if its sanctions substantially prohibit activities protected by the First Amendment. *Grayned*, 408 U.S. at 114, 92 S.Ct. at 2302; *Grody v. State* (1972), 257 Ind. 651, 655, 278 N.E.2d 280, 281–82.

■ The authoritative construction of statutes by state courts controls overbreadth analysis. *Osborne v. Ohio*, 495 U.S. 103, 113–14, 110 S.Ct. 1691, 1698–99, 109 L.Ed.2d 98 (1990); *Price*, 622 N.E.2d at

966. Therefore, the crucial question here is whether we determine that the Gang Statute sweeps within its prohibitions a substantial amount of conduct which may not be punished under the First and Fourteenth Amendments. *See Grayned*, 408 U.S. at 115, 92 S.Ct. at 2302–03. We think not.

■ Here, Helton contends that the Gang Statute infringes upon his right of association guaranteed under the First and Fourteenth Amendments of the U.S. Constitution and article 1, § 9 and § 31 of the Indiana Constitution. As the basis for this challenge, Helton asserts that he was, and can be at any time in the future, prosecuted for merely associating with a group of juveniles that has been labelled a criminal gang.

■ First, the Gang Statute does not prohibit the mere association of five or more persons as Helton contends.[12] Before a person may be charged with criminal gang activity, the Gang Statute expressly requires that the person actively participate in a group which promotes, sponsors, assists in, or participates in, and requires its members to commit felonies or batteries, with knowledge of the group's criminal advocacy. Furthermore, we construe the Gang Statute to require that the active member with guilty knowledge also have a specific intent or purpose to further the group's criminal conduct before he may be prosecuted.[13] Thus, the Gang Statute does

---

**12.** We also note that once a "criminal gang" under the Gang Statute, not always a criminal gang. If a criminal gang one day decides it will no longer promote, sponsor, assist in, or participate in, or require the commission of a felony or a battery for membership or continued membership, then the group will no longer fall within the statutory definition of a criminal gang.

Therefore, members of a former "criminal gang" who adopt morals and policies of engaging in solely lawful conduct may associate freely without fear of prosecution under the Gang Statute. As discussed above, the Gang Statute does not unconstitutionally criminalize the mere status of gang membership. *See Robinson v. California*, 370 U.S. 660, 665–68, 82 S.Ct. 1417, 1420–21, 8 L.Ed.2d 758 (1962) (one may not be prosecuted for status alone).

**13.** Reading the requirement of specific intent into the Gang Statute is a permissible construction which does not require us to improperly substantially rewrite the Statute.

In *Scales v. United States*, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961), the U.S. Supreme Court held that U.S. Court of Appeals correctly and properly construed the membership clause of the Smith Act, which makes a felony the acquisition or holding of membership in an organization which advocates the overthrow of the U.S. Government, to cure any constitutional infirmities. The U.S. Supreme Court and Court of Appeals construed:

"or becomes or is a member of, or affiliates with, any such society, group, or assembly of persons [who teach, advocate, or encourage the violent overthrow of government], know-

not impermissibly establish guilt by association alone, but it requires that a defendant's association pose the threat feared by the legislature in proscribing it, that is, the threat of criminal gang activity which terrorizes peaceful citizens. *See Robel,* at 264, 88 S.Ct. at 424.

■ Second, the commission of a felony or a battery is not protected activity even when committed by a group exercising their constitutional right to free association. *Choate,* at 181.

■ Helton also contends that the Gang Statute is unconstitutionally overbroad because it could conceivably interfere with the free exercise of others' First Amendment rights and legally permissible conduct such as contact sports.

■ We first note that Helton's claim that the Gang Statute punishes protected activities of others is a valid federal overbreadth challenge. Because overbroad laws, like vague laws, deter privileged activity, an appellant has standing to raise a facial overbreadth challenge, even though he does not claim that the statute punished protected activity as applied to him. *Grayned,* 408 U.S. at 114, 92 S.Ct. at 2302;

*Gooding,* 405 U.S. at 521, 92 S.Ct. at 1105. The overbreadth doctrine is an exception both to the traditional as applied mode of judicial review and to the general rule that an individual lacks standing to litigate the rights of third persons. *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). However, a statute is not overbroad merely because one may conceive of a single impermissible application, but only if it prohibits a substantial amount of protected conduct. *Osborne,* 495 U.S. at 112, 110 S.Ct. at 1697–98 (1990). There must be a realistic danger that the statute itself will significantly compromise recognized First Amendment rights of parties not before the court for it to be facially challenged on overbreadth grounds. *Los Angeles City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

■ Moreover, any thought that the Constitution prohibits criminal prosecution for all individual associational relationships unless accompanied by the commission of specific criminal acts, is dispelled by familiar legal concepts of conspiracy and complicity.[14] *See Scales,* 367 U.S. at 225, 81

---

ing the purposes thereof—" is guilty of a felony ... to mean that only active members, and not merely passive, nominal, inactive or purely technical members, with knowledge of the group's illegal advocacy and a specific intent to bring about the group's criminal advocacy could be prosecuted for the acquisition or holding of membership in such an organization. The *Scales* Court read the elements of active membership and specific intent into the membership clause of the Smith Act based solely on that clause's requirement that a defendant have knowledge of the organization's illegal activity. *United States v. Robel,* 389 U.S. 258, 260, 88 S.Ct. 419, 422, 19 L.Ed.2d 508 (1967) (citing *Aptheker v. Secretary of State,* 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964)).

In *Robel,* the U.S. Supreme Court held that section 5(a)(1)(D) of the Subversive Activities Control Act, which made it unlawful for any member of the Communist-action group to engage in any employment in any defense facility, could not be saved from constitutional infirmity because the requirements of active membership, guilty knowledge, and specific intent of furthering the group's unlawful goals could not be read into the statute's overly broad language without substantial rewriting. *Robel,* 389 U.S. at 260–

68, 88 S.Ct. at 422–26. The statute in *Robel* established guilt by association, indiscriminately trapping membership which can be constitutionally punished (active membership, with guilty knowledge and specific intent) and membership that cannot be so proscribed (passive membership absent specific intent, even with knowledge of group's unlawful aims). *Robel,* at 264–68, 88 S.Ct. at 424–26.

Our reading of specific intent into Indiana's Gang Statute, which itself expressly requires both active participation and intentional or knowing participation, is a permissible construction under *Scales* and *Robel.*

**14.** There is no great difference between a charge of being a member of a group which engages in criminal activity and being a member of a conspiracy, many of whose participants are unknown or not before the court. *Scales,* 367 U.S. at 226, n. 18, 81 S.Ct. at 1485, n. 18. Any imagined difficulties in attributing criminal conduct to an abstract entity are cured, as far as any individual defendant is concerned, by the requirements that the defendant knew that the *organization* engages in criminal advocacy, and that it was the defendant's purpose to further the *organization's* criminal advocacy. *Id.* at 226–27, 81 S.Ct. at 1484–85.

S.Ct. at 1484 (Governments may punish dangerous behavior and those who work to bring about such behavior). Since the legislature did not resort to either of these concepts, the critical inquiry here is whether the relationship between the fact of membership and the underlying substantive illegal activity is not too tenuous to permit its use as the basis of criminal liability. *Id.*, at 226, 81 S.Ct. at 1484–85. A statute which makes a felony the acquisition or holding of membership in an organization which advocates criminal behavior may constitutionally do so if it is narrowly drawn or authoritatively construed to punish only active members with a knowledge of the organization's illegal advocacy, and a specific intent to bring about or further the organization's criminal goals. *Id.*, at 228, 81 S.Ct. at 1485–86; *see also Robel*, 389 U.S. at 262–67, 88 S.Ct. at 422–25.

■ Reading I.C. 35–45–9–1 and I.C. 35–45–9–3 together, the legislative purpose and a plain reading of the statutes dictate that the Gang Statute clearly forbids a person from: (a) actively participating or being an "active" member[15] in a group with five or more members which promotes, sponsors, assists in, or participates in the commission of a felony or an act that would be a felony if committed by an adult or a battery, and requires as a condition of

membership the same criminal conduct, (b) with knowledge of the gang's illegal advocacy of felonies or batteries,[16] and (c) with specific intent to further, facilitate, or accomplish the substantive criminal conduct, that is, the commission of a felony or an act that would be a felony if committed by an adult or a battery.

■ Under the Gang Statute, as under the membership clause of the Smith Act in *Scales*, IGD is an organization which engages in the targeted criminal conduct. Neither a person who actively and knowingly works in the ranks of the criminal gang, intending to contribute to the success of the gang's illegal activities, nor a member to whom the gang has assigned the task of carrying out the substantive criminal act, is immune from prosecution. *See Scales*, 367 U.S. at 227, 81 S.Ct. at 1485.

To the extent that the Gang Statute prohibits individual activity which emanates from the association of five or more persons, the Gang Statute may constitutionally do so where:

> The individual (1) is an active member of a group with five or more members which, promotes, sponsors, assists in, or participates in the commission of a felony or an act that would be a felony if committed by an adult or a battery, whether

---

**15.** "The distinction between 'active' and 'nominal' membership is well understood in common parlance (citations omitted) and the point at which one shades into the other is something that goes not to the sufficiency of the statute, but to the adequacy of the trial court's guidance to the jury by way of instructions in a particular case." *Scales*, at 223, 81 S.Ct. at 1483.

A person who merely becomes a member of an illegal organization, by this act alone, does nothing more than signify his assent to the group's purposes and conduct and provide moral encouragement and sympathy. *Id.* at 227, 81 S.Ct. at 1485. It may be argued that such encouragement and assent fall short of the active participation required to permit the imposition of criminal sanctions. *Id.* A member, as distinguished from an active participant or a conspirator, may indicate his approval of a criminal gang by the fact of his membership without thereby necessarily committing himself to further the criminal gang's goals by any act or course of conduct whatever. *Id.* at 228, 81 S.Ct. at 1485–86.

The Gang Statute requires that a person knowingly and "actively participates" in the criminal gang and have a specific intent to further the gang's unlawful goals before he may be prosecuted. "Actively participates" requires more than the mere voluntary listing of a person's name on the gang's roll. The mere presence of a person's name on a gang's roll is insufficient to impute to him the gang's illegal goals. Thus, the Gang Statute does not unconstitutionally establish guilt by association alone or unconstitutionally punish nominal, inactive, purely technical, or passive membership, even if accompanied by knowledge and intent. *See id.*, at 222, 81 S.Ct. at 1482–83; *see also Robel*, 389 U.S. at 262–66, 88 S.Ct. at 422–425.

**16.** The requirements of active participation and knowledge stand apart. The element of knowledge requires linking a defendant with the gang's illegal activities, whereas, the element of activity may be shown by the defendant's participation in the general affairs of the gang. *See Scales*, 367 U.S. at 223, n. 15, 81 S.Ct. at 1483, n. 15.

consensual or non-consensual, and which requires the same as a condition of membership or continued membership, (2) has knowledge of the group's criminal advocacy, and (3) has a specific intent to further the group's criminal goals.

When construed and applied so as to reach only active members who have knowledge of the gang's criminal advocacy and a specific intent to further the gang's criminal conduct, and therefore to prevent a conviction for mere passive membership, the Gang Statute does not infringe upon freedom of association in violation of the First Amendment. Thus, the member for whom the criminal gang is an instrument for the advancement of legitimate goals and policies does not fall within the Gang Statute's ban since he lacks the requisite specific intent to further criminal conduct. Such a member may be foolish, deluded, or perhaps merely unbelievably optimistic; however, he is not made a criminal by the Gang Statute. *See id.*, at 230, 81 S.Ct. at 1486–87.

The Gang Statute does not cut deeper into the freedom of association than is necessary to deal with the substantive evil of gang violence and does not make criminal all association with an organization which has been shown to engage in illegal activity. *See id.*, at 229, 81 S.Ct. at 1486. The Gang Statute requires clear proof that a defendant actively participated in the gang with knowledge of its criminal advocacy and a specific intent to accomplish the gang's illegal aims. Thus the Gang Statute is not unconstitutionally vague or overbroad and does not unconstitutionally interfere with one's right to freedom of association.

### C. Equal Protection Clause

Helton next contends that the Gang Statute deprived him of equal protection under the laws as guaranteed under § 1 of the Fourteenth Amendment to the U.S. Constitution and article 1, § 23 of the Indiana

17. Article 1, § 23 of the Indiana Constitution states:

The General Assembly shall not grant to any citizen, or class of citizens, privileges or im-

Constitution.[17] Specifically, Helton claims that the prosecutor has and will continue to apply the Gang Statute in a discriminatory manner to groups he alone deems undesirable, which tend to be poor, disadvantaged youths. Helton argues discriminatory prosecution for intra-group violence denies individual members of undesirable groups equal protection of the laws.

■ When there is a violation of the equal protection clause of the Fourteenth Amendment of the U.S. Constitution, there is also a violation of the equal privileges clause of the Indiana Constitution. *Indiana High School Athletic Ass'n v. Raike* (1975), 164 Ind.App. 169, 176, 329 N.E.2d 66, 71 n. 2. Therefore, we will address Helton's equal protection claims together.

■ The purpose of the equal protection clauses is to prevent the distribution of extraordinary benefits or burdens to any group. *O'Brien v. State* (1981), Ind. App., 422 N.E.2d 1266, 1270. A statute which does not discriminate on its face may nonetheless deny equal protection if it is enforced or applied in a discriminatory manner. *Center Township of Marion County v. Coe* (1991), Ind.App., 572 N.E.2d 1350, 1361. The defendant bears the burden of establishing such discrimination. *Kashani v. Purdue University*, 763 F.Supp. 995 (N.D.Ind.1991).

■ Here, Helton does not contend that the Gang Statute facially violates his right to association, rather he baldly asserts, without any supporting evidence, that the prosecutor has applied and will continue to apply the Gang Statute in a discriminatory manner. "A defendant's constitutional right to equal protection of the laws is not violated by the prosecutor exercising discretion in deciding to prosecute or not to prosecute a violation of a criminal statute." *Worthington v. State* (1980), Ind.App., 409 N.E.2d 1261, 1267. Moreover, we held in *Issue I.A.* that the degree of discretion

munities, which, upon the same terms, shall not equally belong to all citizens.

afforded the prosecutor under the Gang Statute is constitutional. Helton was not denied equal protection under the laws.

■ Additionally, Helton claims he was denied equal protection of the laws inasmuch as the prosecutor has discretion to prosecute gangs for criminal gang activity, a Class D felony, but to prosecute fraternities under Indiana's Hazing Statute,[18] a Class B misdemeanor for the same conduct.

■ A statute which prescribes different punishments or different degrees of punishment for the same conduct committed under the same circumstances by persons similarly situated violates the equal protection clause. *Id.*, at 1267. Therefore, the critical inquiry here is whether the elements of the Gang Statute and the Hazing Statute are the same or essentially similar; if not, then no equal protection issue is presented. *Id.*

The Hazing Statute provides:

(a) As used in this section, "hazing" means forcing or requiring another person:

 (1) with or without the consent of the other person; and

 . (2) as a condition of association with a group or organization; to perform an act that creates a substantial risk of bodily injury.

(b) A person who recklessly, knowingly, or intentionally performs:

 (1) an act that creates a substantial risk of bodily injury to another person; or

 (2) hazing; commits criminal recklessness, a Class B misdemeanor.

. . . . .

(c) A person who recklessly, knowingly, or intentionally:

 (1) inflicts serious bodily injury on another person; or

 (2) performs hazing that results in serious bodily injury to a person; commits criminal recklessness, a Class D felony.

I.C. 35–42–2–2. Hazing is a class B misdemeanor if the act involved creates only a risk of substantial bodily injury to another person. A person commits criminal recklessness, a class D felony, if the hazing act actually results in serious bodily injury to a person. A person may be prosecuted under the Gang Statute for a class D felony if, among other requirements, he is a member of a group which consists of five or more persons which requires the commission of a felony or an act that would be a felony if committed by an adult or a battery as a condition for membership or continued membership.

The elements of a class B misdemeanor under the Hazing Statute and a class D felony under the Gang Statute differ since the former applies to acts creating only a risk of bodily injury. Therefore, there are distinctions between the two offenses, and no equal protection question is presented. The statutes do not prescribe different punishment for the same conduct depending on the actor. Under each statute, an actor commits a class D felony if he engages in the same type of conduct.

■ In addition, gangs, fraternities, and all groups are treated similarly under both statutes. The prosecutor has discretion to charge gangs and fraternities alike under either statute if their conduct falls within the proscribed conduct. The fact that the prosecutor's discretion to prosecute or not to prosecute a criminal violation extends to two crimes instead of one does not convert this discretion into an unconstitutional delegation of legislative authority or constitute an equal protection violation even though the facts to be proven are very similar. *Worthington,* at 1267; *People v. McCollough,* 57 Ill.2d 440, 313 N.E.2d 462, 465 (Ill.1974) (if conduct for which a defendant is prosecuted constitutes a misdemeanor under one statute and a felony under another there is no equal protection violation in convicting him of the felony).

The Gang Statute did not deprive Helton of equal protection of the laws or equal privileges or immunities.

---

**18.** Ind.Code 35–42–2–2 (1993).

## II. Admissibility of IGD's History Under the Pedigree Exception

██ Next, Helton correctly contends and the State concedes that the trial court erred in allowing Officer Earles to testify concerning IGD's history under the pedigree exception to the hearsay rule. *See In re Paternity of Tompkins* (1989), Ind.App., 542 N.E.2d 1009, 1012 (the pedigree exception permits admission of a declarant's out of court declarations regarding parentage or ancestry. For the statement to be admissible under the pedigree exception, the declarant must be deceased and the *declarant* must have been related by blood or by marriage to the family of the person in question (emphasis in original)).

██ In criminal bench trials, we presume that the court disregarded inadmissible testimony and rendered its decision solely on the basis of relevant and probative evidence. *Coleman,* at 1062. Moreover, an erroneous admission of evidence will result in a reversal only if the defendant establishes prejudice to his substantial legal rights. *Alva v. State* (1993), Ind., 605 N.E.2d 169, 171.

In the present case, Helton received a bench trial. Therefore, whether Officer Earles' testimony about IGD's history was properly admissible or not is of no consequence. Helton has not established any error or prejudice. *See Shockley v. State* (1929), 89 Ind.App. 677, 680, 166 N.E. 676, 679 (prosecutor's remarks regarding defendant's prior convictions was not prejudicial in a bench trial).

Furthermore, even if the trial court improperly considered Officer Earles' testimony, it was harmless error. At Helton's trial, two IGD members testified to the same evidence to which Officer Earles' later testified.[19] Officer Earles' testimony was thus merely cumulative and could not have been prejudicial. *See Alva,* at 171 (prejudicial error cannot be predicated upon evidence which is merely cumulative and not decisive of guilt).

## III. Battery and Consent

Helton contends that if the Gang Statute is constitutional, it does not apply to his conduct. First, Helton argues that because the Hazing Statute prohibits intra-group violence that the Gang Statute may only prohibit out-of-group violence. Second, Helton argues that because he restricted his beatings to consenting individuals, he did not commit a battery and therefore did not engage in criminal gang activity.

██ The legislature can, and has, addressed intra-group criminal activity in more than one statutory provision. It has done so within the Criminal Gang Control Act[20] itself. I.C. 35-45-9-4 expressly prohibits a person from threatening harm to another person for withdrawing from a criminal gang or for refusing to join a criminal gang. Furthermore, although gang members may consent to violence, intra-gang and gang-on-gang criminal activity have a direct, adverse impact on peaceful citizens and often result in a breach of the public peace. Therefore, we conclude that our legislature did not exempt all intra-gang activity from the Gang Statute, even where gang members consent to being abused.[21]

19. Biff Kinnick testified that (1) he was initiated into IGD in 1991, (2) Helton, Moran, and an IGD leader from Chicago called the February 12, 1992 meeting to initiate Hammons, (2) Helton hit Hammons in the head fifteen times, (3) Helton stated that since they were having trouble with others at school and other places that IGD members should walk in pairs and help each other and never back down if someone caused trouble, and (4) there were twelve to fourteen members.

Scott Bullington testified that (1) he was initiated into IGD in 1991 by receiving "a 46," (2) Helton was second in command at the February 12, 1992 meeting and struck Hammons 20 times as part of the traditional "46" initiation ritual, and (3) Helton stated members should walk in pairs, stick together, never back out of any fight, and that they would be violated (beaten as punishment) for missing a meeting and eight-balled (circled and beaten by eight other members) if they wanted out of the gang.

20. I.C. 35-45-9-1, -4.

21. When applying a statute, our objective is to effectuate the legislature's purpose. *Spaulding,* 550 N.E.2d 307, 309. The court must make an independent determination as to the purpose of the statute. *Indiana Aeronautics Comm. v. Am-*

Helton's second argument that an intra-gang beating is not a battery relies upon the general rule that consent is a defense to the offense of battery.[22] However, our supreme court recently recognized exceptions to the general rule. *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 18. Consent is not a defense to the charge of battery in these limited circumstances: (1) Where the defendant goes beyond acts consented to and beats to death the victim who consented only to the defendant's execution of the organization's initiation ritual of being struck in the stomach until he passed out; (2) Where it is against public policy to permit the conduct or resulting harm even though it is consented to, as where there are no sexual overtones and the battery is a severe one which involves a breach of the public peace, as well as, an invasion of the victim's physical security; (3) Where consent is ineffective as where it is obtained by fraud or from one lacking legal capacity to consent; (4) Where a deadly weapon is employed; (5) Where death results; or, (6) Where the battery is atrocious or aggravated. *See Jaske,* at 17–18 and citations therein.

Although the *Jaske* court made the broad statement that "consent is not a defense to the charge of battery," our supreme court did not hold that consent could never be a defense to the charge of battery. The rule in *Jaske* must be limited to its facts and the facts of the supporting cases cited therein. The *Jaske* rule that consent is no defense to the offense of battery is the exception, rather than the general rule. If our supreme court had held that defense could never be a defense to the charge of battery, it would have banned numerous legal activities, such as athletic contests, professions, and occupations involving invasions of one's physical integrity.[23] Obviously, the *Jaske* court did not intend its holding to reach such conduct.

In the present case, Helton delivered 20 bare-fisted, hard blows directly

*bassadair, Inc.* (1977), 267 Ind. 137, 368 N.E.2d 1340, *cert. denied, Four Winds, Inc. v. Indiana Aeronautics Commission,* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978).

Although there is no preamble to Indiana's Criminal Gang Control Act, preambles of gang control statutes of other states provide insight into the reasons such statutes were enacted. The preambles to the "Street Terrorism Enforcement and Prevention Act[s]" of Louisiana and California state that the Acts were enacted in response to a state of crisis caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against and affecting peaceful citizens of their neighborhoods and in an effort to protect every person's right to be secure and protected from the activities of violent groups and individuals whether the activities directly or indirectly target the public. *See* Cal.Penal Code § 186.20–21; La. R.S. 15:1401–1402. We believe the same driving forces compelled our legislature to enact Indiana's Criminal Gang Control Act.

The Gang Statute was not intended to interfere with the constitutional exercise of the protected rights of freedom of association and expression. The criminal activities proscribed, individually and collectively, present a clear and present danger to the public order and safety and are not constitutionally protected.

**22.** The general rule is that consent is ordinarily a defense to the charge of battery in cases: (1) involving sexual overtones, (2) involving reasonably foreseeable and known hazards of lawful athletic contests or competitions, lawful sports or professions, or occupations, (3) where consent establishes justification for the serious harm, (4) involving reasonable corporal punishment by a teacher upon a pupil for disobedience and where reasonably necessary for the proper education and discipline of the pupil, and (5) where the battery is not atrocious, aggravated, or fatal and does not include a breach of the public peace. *See* Paul H. Robinson, 1 Criminal Law Defenses § 66, § 106 (1984); 58 A.L.R.3d 662.

Consent is connected with the harm or evil sought to be prevented; therefore, if the victim consents to defendant's touching, that touching is not rude or insolent and should not be considered unlawful unless it meets one of the exceptions to the general rule.

**23.** A participant in an athletic event, game, or sport accepts the dangers inherent in the activity as far as they are obvious and necessary, but does not assume the risks associated with the negligence of others. 65(A) C.J.S. Assumption of Risk § 174(6) (1993). Consent is not a defense if the touching exceeds the scope of consent, violates an established rule, or if the victim was not made aware of the risks prior to consent. *See id.;* Paul H. Robinson, 1 Criminal Law Defenses § 106(b); *Kabella v. Bouschelle,* 100 N.M. 461, 672 P.2d 290 (App.1983) (conduct prohibited by rules of football not assumed); *Whipple v. Salvation Army,* 261 Or. 453, 495 P.2d 739 (1972) (conduct prohibited by rules not assumed).

to Hammons head as part of the IGD initiation ritual. Hammons, like other initiates, agreed to Helton's delivery of "a 46" after having been advised that it consisted of being struck 40 times in the head and 6 times in the chest. However, striking someone continuously in an area which is susceptible of injury as severe as permanent brain damage is an atrocious, aggravated battery for which consent is no defense.[24] *See Jaske*, at 18 and discussion above. Helton's conduct is prohibited under the Gang Statute.

## CONCLUSION

Indiana's Criminal Gang Activity Statute passes constitutional muster. Its prohibitions include a battery committed by one gang member on another consenting gang member. The trial court's erroneous admission of Officer Earles' testimony of IGD's history under the pedigree exception was harmless error.

Judgment affirmed.

ROBERTSON and NAJAM, JJ., concur.

---

**24.** Although most IGD members are teenagers, the record does not include Hammons' age, so we do not address whether his consent to Helton's battery was also ineffective due to legal incapacity.