**Frank JOHNSON, Appellant–
Defendant Below,**

v.

**STATE of Indiana, Appellee–
Plaintiff Below.**

No. 49A02–9408–CR–475.

Court of Appeals of Indiana,
First District.

March 27, 1995.

Earl C. Townsend, Jr., Townsend & Townsend, Indianapolis, for appellant.

Pamela Carter, Atty. Gen. of Indiana and Suzann Weber Lupton, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

ROBERTSON, Judge.

Frank Johnson appeals his conviction of stalking, a class B misdemeanor. Johnson received a sentence of one hundred and eighty (180) days, with one hundred and sixty (160) days suspended and with credit for six (6) days served. Johnson states the issues as:

I. Whether the credible evidence was and is not sufficient to support Defendant–Appellant Johnson's conviction under the 1993 Stalking Statute, I.C. 35–45–10–1 through 5, and the decision, verdict and judgment of the trial Court finding Frank Johnson, "... guilty as charged of stalking", is contrary to law in that the actions of Defendant Johnson complained of were lawfully done within the provisions of the statute I.C. 35–45–10–1 defining "stalk", to wit: "The term does not include statutorily or *constitutionally* protected activity."?

II. Whether the statute upon which Defendant–Appellant Johnson was charged and tried, called "Stalking", I.C. 35–45–10–1 through 5, a Class B misdemeanor, is unconstitutional and void for vagueness and violative of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and violative of Article 1, Sections 9 and 31 of the Constitution of the State of Indiana?

III. Whether the trial Court at the sentencing hearing for Defendant–Appellant Johnson committed fundamental error in giving the sentence it did to Mr. Johnson, by its stated reasoning to wit:

"I believe this is a very serious crime and you followed this woman across state lines. Congress is thinking of making this kind of thing a federal offense because you crossed state lines and furthermore, people are supposed to be safe at shelters for battered women and their kids and that's where she was and that's where a lot of activity took place and I think that is an aggravating circumstance because [the victim] was not even able to seek refuge in a place where the community expects that she would be safe."

We affirm.

I

Johnson attacks the sufficiency of the evidence. The evidence most favorable to his conviction reveals that the victim had been Johnson's girlfriend for a year and a half. She had lived with him, and he had supported her and her children. She ended the relationship on August 19, 1993, because they would fight and argue. At various times, she had moved to four different homes in Ohio. Johnson would always find her, so she would move. She had told her counselor the situation about how she was trying to leave Johnson and how he would not leave her alone. Every time she had left him, he had found her and took control of her life again. The Salvation Army in Ohio had recommended her to a Salvation Army shelter in Indianapolis, and she came to Indiana on August 19, 1993.

Johnson came to Indianapolis three times from September 22, 1993, to September 30, 1993, to find the victim. On September 22, 1993, Johnson appeared at the shelter which housed the victim and her children. He was outside the shelter questioning people as they entered and exited the shelter. He wanted to know whether the victim and the children lived there. Shelter residents were upset and disturbed by his presence, and the assistant director of the shelter confronted Johnson.

Johnson identified himself as the victim's husband and said he was there looking for his wife and children. The assistant director invited him into her office for a conversation. During the conversation, Johnson revealed his true identity. He said he was concerned about the victim, that he loved her very much, and that he just needed to talk with her. He believed he could persuade her to go back to Ohio with him. The assistant director informed him that, if he wanted to talk to any client of the shelter, he should leave his name and the location where he could be contacted. The information would be posted, and the client was free to contact him. The assistant director would not con-

firm whether the victim was in the shelter. The assistant director also informed Johnson about the shelter's policy on questioning clients. The shelter had a policy to keep the identities of its domestic violence clients confidential for safety reasons and to keep people at the front of the shelter from talking to people entering or leaving the building, especially if they were on shelter property. Johnson said he would abide by the policies and left the office.

Nevertheless, between September 22, 1993, and September 30, 1993, Johnson returned to the shelter. He again questioned residents outside the shelter. He also appeared at the children's school and tried to find out where they were living. On September 30, 1993, the staff of the shelter decided to move the victim to another location. The reason for that action was:

> [b]ecause she was very upset and the children were terrified and they felt very unsafe. They were like in the shelter all the time. They couldn't even go out of the shelter. They was like imprisoned in the shelter. Children couldn't go to school or anything. The children—her daughter started crying and she was just very upset.

(R.94).

On September 30, 1993, the victim went to the Marion County Prosecutor's Office. She was tired of running and just wanted to have something done to make Johnson leave her alone. She wanted a restraining or protective order and wanted to file stalking charges against Johnson. A few minutes later, Johnson appeared at the prosecutor's office and said he wanted to talk to the victim. The victim began to cry and indicated to the receptionist that Johnson was bothering her. The victim told Johnson she did not want to talk to him. She stood with her back to him as he talked in her ear. She was in tears and shaking her head no. She told him all the talking was done and she was finished with it. Johnson left the prosecutor's office.

The victim talked to the staff at the prosecutor's office and told them that Johnson was bothering her and would not leave her alone. The prosecutor's staff contacted the Marion County Sheriff's Department, which located Johnson in an elevator. When asked to iden-

tify himself, however, he gave a name other than Frank Johnson. Johnson matched the victim's description of him so he was asked to produce some identification. Johnson then said he was being harassed by someone and voluntarily returned to the prosecutor's office when told he could file a harassment complaint there. Upon his return, the victim identified him as Frank Johnson. He proceeded to talk with the victim again and was arrested.

The victim did not see Johnson from September 22, 1993, to September 30, 1993, until he appeared at the prosecutor's office. Nevertheless, the victim had known that Johnson had been looking for her and that he had been pretending to be her husband so he could locate her and her children. She had known that he had made at least four telephone calls to the shelter and had gone to her children's school. The victim had been afraid of Johnson because he had always found her whenever she had left him. He had threatened her with guns. He had pressured her and had told her what to do.

Our legislature has defined the offense of stalking in Indiana Code Title 35, Article 45, Chapter 10, Sections 1 through 5. Specifically, P.L.242–1993, Sec. # 4, provides:

> SECTION 4. IC 35–45–10 IS ADDED TO THE INDIANA CODE AS A NEW CHAPTER TO READ AS FOLLOWS:

> Sec. 1. As used in this chapter, "stalk" means a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened. The term does not include statutorily or constitutionally protected activity.

> Sec. 2. As used in this chapter, "harassment" means conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does

not include statutorily or constitutionally protected activity, such as lawful picketing pursuant to labor disputes or lawful employer-related activities pursuant to labor disputes.

Sec. 3. [A]s used in this chapter, "impermissible contact" includes but is not limited to knowingly or intentionally following or pursuing the victim.

Sec. 4. As used in this chapter, "victim" means a person who is the object of stalking.

Sec. 5. (a) A person who stalks another person commits stalking, a Class B misdemeanor.

(b) The offense is a Class A misdemeanor if at least one (1) of the following applies:

(1) A person:

(A) stalks a victim; and

(B) makes an explicit or an implicit threat with the intent to place the victim in reasonable fear of:

(i) sexual battery (as defined in IC 35-42-4-8);

(ii) serious bodily injury; or

(iii) death.

(2) A protective order or other judicial order under IC 31-1-11.5 has been issued by the court to protect the same victim or victims from the person and the person has been given actual notice of the order.

(3) A criminal complaint of stalking that concerns an act by the person against the same victim or victims is pending in a court and the person has been given actual notice of the complaint.

(c) The offense is a Class D felony if:

(1) the act or acts were committed while the person was armed with a deadly weapon; or

(2) the person has an unrelated conviction for an offense under this section.

Johnson claims his conduct was statutorily or constitutionally protected and therefore does not fall within the acts which the stalking statute prohibits. He contends the State has produced no evidence of repeated or continuing harassment that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened. He claims he merely exercised his rights to free speech and peaceful assembly. He directs our attention to the "credible" evidence adduced at trial. We reject his invitation to reweigh the evidence.

A person who stalks another person commits stalking, a class B misdemeanor. "Stalk" involves a knowing or an intentional course of conduct. This case involves no serious dispute that Johnson engaged in a knowing or intentional course of conduct.

[1] The conduct must involve repeated or continuing harassment of another person. "Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress. The evidence is sufficient to show that Johnson directed his conduct toward the victim and that his actions actually caused her to suffer emotional distress. He repeatedly and continuingly pursued the victim in an attempt to locate her, and did so knowingly or intentionally, in order to get her to go back with him to Ohio. He hid his identity and disturbed the operation of the shelter in an attempt to determine where she was living. His actions made her a virtual prisoner inside the shelter. A reasonable person could suffer emotional distress under the circumstances presented. Further, the evidence is sufficient to support the determination that Johnson engaged in impermissible, indirect and direct contact with the victim.

The conduct must be such that it would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and actually cause the victim to feel terrorized, frightened, intimidated, or threatened. The record amply shows the victim felt frightened, so much so that she would not leave the shelter and had to be moved to another location. Moreover, a reasonable person could feel threatened by someone who had produced a gun in the past and had hidden his identity to locate her hiding place.

The evidence is sufficient to support the conviction of stalking as a class B misdemeanor. The evidence supports the determination that Johnson's conduct crossed the bounds of statutorily or constitutionally protected activity.

## II

■ Johnson claims his conviction is violative of due process. He claims the stalking statutes are void for vagueness because they leave a reasonable person uncertain which, if any, conduct may be in violation of them. He contends the statutes provide no sure determination about where constitutionally protected activity ends and stalking begins. He maintains that a person of common intelligence must necessarily guess at the meaning of the statutes. We note that state and federal vagueness analysis is the same. *Helton v. State* (1993), Ind.App., 624 N.E.2d 499, 505.

■ Under basic principles of due process, a law is void for vagueness if its prohibitions are not clearly defined. *Helton,* 624 N.E.2d at 505. A statute is not void for vagueness if individuals of ordinary intelligence would comprehend it to fairly inform them of the generally proscribed conduct. *Id.* The statute need only inform the individual of the generally proscribed conduct; a statute need not list with itemized exactitude each item of conduct prohibited. *McIntosh v. State* (1994), Ind.App., 638 N.E.2d 1269, 1276. The central requirement in vagueness cases is that the criminal statute must contain something to indicate where the line is to be drawn between trivial and substantial things so that erratic arrests for trivial acts and omissions will not occur. *Id.*

■ The statutes in question are not void for vagueness. Stalking is an offense which involves a knowing or intentional course of conduct. The offense involves a repeated or continuing harassment of another person. That harassment includes conduct which not only causes emotional distress to the victim but would cause emotional distress in a reasonable person. The actions must not only cause the victim to feel terrorized, frightened, intimidated, or threatened but must be such that would cause a reasonable person to feel so, as well.

The reasonableness standards contained in the statutes provide a constraining and intelligible enforcement standard for those charged with enforcing the statutes. *See Price v. State* (1993), Ind., 622 N.E.2d 954, 967. Further, the requirement of a knowing or intentional course of conduct involving repeated or continuing harassment directed toward the victim is a requirement of specific intent. That the State must prove the defendant himself entertained specific intent militates against a determination that the statutes are vague. *See Kinney v. State* (1980), Ind.App., 404 N.E.2d 49, 50–51. Further, that the State must prove engagement in a repeated or continuing course of conduct militates against arbitrary enforcement. For the reasons stated, the statutes contain standards which indicate where the line is to be drawn between trivial and substantial things so that erratic arrests for trivial acts and omissions will not occur. *E.g., Pallas v. State* (1994), Fla.App., 636 So.2d 1358; *People v. Heilman* (1994), 25 Cal.App.4th 391, 30 Cal.Rptr.2d 422; *Woolfolk v. Virginia* (1994), 18 Va.App. 840, 447 S.E.2d 530. The stalking statutes are therefore not void for vagueness.

## III

Johnson claims the sentencing judge improperly attempted to enforce laws not yet enacted and thereby violated the spirit of the prohibition against ex post facto laws. To the contrary, the trial judge merely considered some of Johnson's conduct as an aggravating factor under the circumstances. Moreover, the trial court imposed the presumptive sentence. I.C. 35–50–3–3. Johnson has not shown that the trial court committed error and has not shown how he was harmed by the statements.

Judgment affirmed.

NAJAM and BARTEAU, JJ., concur.