Patricia I. ALLISON, Appellant (Defendant Below),

v.

STATE of Indiana Appellee (Plaintiff Below).

No. 27A02–8706–CR–220.

Court of Appeals of Indiana, Second District.

Aug. 31, 1988.

Jack B. Welchons, Patrick N. Ryan, Ryan & Welchons, Marion, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Patricia I. Allison appeals her convictions on four counts of dealing in marijuana as class A misdemeanors, one count of dealing in marijuana, a class D felony,[1] and maintaining a common nuisance, a class D felony.[2]

We affirm.

\*　　\*　　\*　　\*　　\*　　\*

1. IC 35–48–4–10 (Burns 1985) defines dealing in marijuana:

(a) A person who:

(1) Knowingly or intentionally [manufactures] or delivers marijuana, ... pure or adulterated;

\*　　\*　　\*　　\*　　\*　　\*

commits dealing in marijuana, ... a class A misdemeanor.

(b) However, the offense specified in subsection (a) is:

(1) A class D felony if:

(B) The amount involved is more than thirty [30] grams but less than ten [10] pounds of marijuana....

2. IC 35–48–4–13(b) (Burns 1985) defines maintaining a common nuisance:

(b) A person who knowingly or intentionally maintains a building, structure, vehicle, or other place that is used:

(1) By persons to unlawfully use controlled substances; or

## FACTS

During November of 1985, the Indiana State Police conducted a drug investigation in Fairmount, Indiana. On November 5, a confidential informant accompanied Kent Havens, an undercover police officer, to 302 South Barclay Street in Fairmount. Inside the residence, the informant introduced Havens to Allison and asked her, "Could you get us a couple?" Record at 186. Havens paid Allison $4.00 for two marijuana cigarettes she produced from her purse.

On November 7, Havens and the informant returned to the residence. The informant asked Allison if "she could get us some." Allison gave them a bag of marijuana and Havens gave her $20.00. Havens and the informant again went to the residence on November 12 and purchased another bag of marijuana for $20.00. Early in the day of November 19, Havens and the informant set up a buy for a large quantity by telling Allison they needed at least a couple of bags for a party. Allison quoted a price of $160.00. They went to the residence that evening and requested two ounces. Allison pulled four bags from a brown paper sack and weighed two of the bags in front of Havens and the informant. The weight of the contents of the two bags was 47.6 grams. Havens paid Allison $160.00 for the bags.

On November 22, Havens and the informant went to the residence and asked Allison if she could get them something for that night. She stated that she did not have any but she knew someone who could get them some for $70.00. Havens and the informant returned that evening around 8:00 p.m. Allison advised them she was expecting the marijuana around 9:00 p.m. Havens gave Allison $70.00 in marked bills and left with the informant. They returned around 9:00 p.m. and shortly after their arrival, Darrell Alley entered the residence and inquired as to who wanted the two bags. Allison pointed to Havens and the informant. Alley gave Havens two bags of marijuana and Allison gave Alley the $70.00. Allison and Alley were placed under arrest.

The information contained six counts. The first five alleged that Allison delivered marijuana to Kent Havens on the following dates: Count I—November 5, 1985 (class A misdemeanor), Count II—November 7, 1985 (class A misdemeanor), Count III—November 12, 1985 (class A misdemeanor), Count IV—November 19, 1985 (class D felony), and Count V—November 22, 1985 (class A misdemeanor). Count VI charged Allison with maintaining a common nuisance, to-wit: a house used for the sale of marijuana.

Prior to trial, Allison made a motion for discovery which included a request that the State produce:

A list of witnesses that it may call at the trial including the *name* of a confidential informan*t* if he were present when the alleged transaction occurred.

Record at 48 (our emphasis). The State refused to produce the name of the confidential informant "on the grounds that the interests of the State in nondisclosure outweighs the interests of the defendant in disclosure." Record at 62. Allison filed a motion to compel discovery seeking the *name* of the informant. Allison alleged "that if the State is able to prove its case at all she would have a valid defense of entrapment [sic] and all eye witnesses and ear witnesses would be necessary and proper to testify in this cause for a fair trial." Record at 64. The court denied Allison's motion and her motion to reconsider.

Finally, prior to trial, Allison caused a subpoena to be issued to Michael Alexander, 321 South Penn, Fairmount, IN. The Sheriff's Return was marked "NFIB—In California in Marines." Record at 88. At sentencing, Michael Alexander was identified by the State as the confidential informant.

At trial, Allison did not call any witnesses. The jury returned verdicts of guilty on all six counts.

(2) For unlawfully keeping or selling controlled substances; commits maintaining a common nuisance, a class D felony.

## ISSUES

1. Whether the trial court erred in refusing to compel disclosure of the identity of the confidential informant;

2. Whether the evidence is sufficient to sustain Allison's conviction of dealing in more than 30 grams of marijuana charged in Count IV;

3. Whether the trial court erred in giving a final instruction on aiding, inducing or causing another person to commit an offense; and

4. Whether the trial court erred in refusing Allison's tendered final instructions numbered 1 and 3.

### I.

■ Allison claims the trial court's failure to compel disclosure of the name[3] of the confidential informant denied her a fair trial, because the informant was an active participant in the transactions and his testimony was necessary for an entrapment defense. She claims the trial court's ruling violated her right to due process under the United States Constitution and her rights to fundamental fairness and confrontation of witnesses under the Indiana Constitution.

■ The general policy is to permit nondisclosure of an informant's identity unless the defendant can prove the necessity for its disclosure. Thus, the general rule is that, to compel disclosure, the defendant has the burden of proving disclosure is relevant and helpful to the defense or is necessary for a fair trial. *Brafford v. State* (1987), Ind., 516 N.E.2d 45, 48.[4] However, this statement of the general rule is misleading in that it does not accu-

rately describe the defendant's burden. Necessarily, the defendant also has the burden of showing that the identity of the informant is *unknown* to the defense. Thus, in *Davenport v. State* (1984), Ind., 464 N.E.2d 1302, 1306 our supreme court stated:

> Although Michele [the confidential informant] did play a major part in the controlled buy, we are not persuaded that an order of the disclosure of the name of the informant would have been essential to a fair determination in this case. Since defendant strongly suspected Michele was the informant, he could have issued a subpoena for her as a defense witness at the suppression hearing or the trial. At the very least he could have deposed her....

■ In the instant case, because the record is devoid of even a claim that the informant's identity was unknown to Allison, she failed to meet an essential aspect of her burden of proof. That failure, however, is quite understandable. The record reveals Allison caused a subpoena to be issued to the informant. Further, the informant, a resident of the Fairmount area, introduced Havens to Allison. Finally, at the sentencing hearing, the State offered evidence Allison, three months prior to her trial, yelled to the informant's parents, who were out for a walk and passed Allison's residence, that "Your son is a f____ narc ... When he comes back—when he comes back to Fairmount, he's dead meat." Record at 298. This evidence reasonably supports the conclusion Allison knew the informant's identity prior to trial and understandably failed to offer evidence to the contrary.

---

**3.** On appeal, Allison also argues the trial court erred by failing to require the State to reveal the informant's whereabouts. However, at no time did Allison request that information, instead requesting only the informant's name. Therefore, this issue is not before this court.

**4.** If the defendant makes his required showing, the burden shifts to the State to make a "more compelling showing" that disclosure would "unfairly hamper the prosecution or do a disservice to the public interest." *Howard v. State* (1969), 251 Ind. 548, 244 N.E.2d 127, 128; *Bernard v.*

*State* (1967), 248 Ind. 688, 230 N.E.2d 536. Then the court must balance

> the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro v. U.S.* (1957), 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639.

## II.

■ Allison claims the evidence fails to support her felony conviction on Count IV because the State failed to meet its burden of proving she delivered more than 30 grams of marijuana to Kent Havens. State's Exhibit 4 consisted of the two bags of material Havens purchased from Allison. The State's chemist testified the material in the bags weighed 47.6 grams and that testing of random samples revealed the presence of only marijuana seeds. However, Allison argues the evidence is deficient because it fails to reveal that the total content of the bags contained more than 30 grams of marijuana as defined by IC 35–48–1–1 (Burns 1985).[5] The enhancement to a class D felony, if the amount of marijuana is more than 30 grams under IC 35–48–4–10(b), currently applies even where the drug is adulterated. *Burst v. State* (1986), Ind.App., 499 N.E.2d 1140, 1150. Under the *Burst* analysis, adulterated marijuana can include "other vegetable material" not fitting within the definition of marijuana. *Id.* Therefore, even if State's Exhibit 4 did not contain pure marijuana, the evidence it contained adultered marijuana of a weight in excess of 30 grams supports Allison's conviction of dealing in marijuana as a class D felony.

## III.

Allison argues that the uncontradicted evidence on Count V that Alley delivered the marijuana to Havens rather than her, compels the conclusion she was at most an accessory and therefore, because she was charged as a principal, her conviction must be reversed. She bases her argument on the repeal of IC 35–1–29–1 which permitted an accessory to be charged as a principal. Hence, she also claims the trial court erred in giving its final instruction number 10:

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense.

Record at 143.

■ Allison is incorrect. "One who aids or abets another or induces or causes another to commit a criminal offense can be charged with that offense and tried and convicted as a principal." *Harris v. State* (1981), Ind., 425 N.E.2d 154, 156. There is no separate crime of being an accessory. *Taylor v. State* (1986), Ind., 495 N.E.2d 710, 713. Allison's argument regarding the change in the statute was specifically rejected by our supreme court in *Fisher v. State* (1984), Ind., 468 N.E.2d 1365, 1369. Jury instruction # 10 was a proper statement of the law and supported by the evidence. *Id.; Richards v. State* (1985), Ind., 481 N.E.2d 1093, 1095.

## · IV.

■ Allison's tendered final instruction number 3 was refused by the trial court. The rejected instruction reads as follows:

Indiana Code 35–48–4–13 provides that (a) a person who knowingly or intentionally visits a building, structure, vehicle or other place that is used by any person to unlawfully use a controlled substance commits visiting a common nuisance, a Class B misdemeanor.

Record at 126. Allison argues that the jury could have found that Alley maintained the house for selling marijuana and that she was at most a visitor there. The definition of an offense with which Allison was not charged is irrelevant to the issues to be determined and would only serve to mislead and confuse the jury.

■ Allison also claims error in the trial court's refusal to give her tendered final instruction number 1, which reads as follows:

Section 18 of Article I of the Bill of Rights of the Constitution of Indiana pro-

---

5. "Marijuana" means any part of the plant genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant, including hashish and hash oil; any compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant; fiber produced from the stalks; oil or cake made from the seeds of the plant; any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom); or the sterilized seed of the plant which is incapable of germination. IC 35–48–1–1 (Burns 1985).

vides that: 'The penal code shall be founded on the principles of reformation, and not of vindictive justice.'

Record at 124. Allison argues that had this instruction been given, the jury could have found that the State vindictively abused the penal code in enticing her to commit additional offenses when it could have arrested her after the first one.

Article 1 § 18 of the Indiana Constitution was meant as a guide for drafting and interpreting the penal code:

> The admonition found in Article 1, § 18 of the Constitution ... is an admonition to the legislative branch of the government and is addressed to the public policy which that body is admonished to follow in formulating the penal code. [An instruction on this section] ... is inapplicable as an instruction to a trial jury.

*Denson v. State* (1975), 263 Ind. 315, 320, 330 N.E.2d 734, 737. The trial court did not err in refusing Allison's tendered final instruction number 1.[6]

Judgment affirmed.

CONOVER, J., concurs.

SULLIVAN, J., dissents, with separate opinion.

SULLIVAN, Judge, dissenting.

Allison was charged with maintaining a common nuisance in that the residence in question was used for unlawfully selling controlled substances. These very sales constituted the three separate charges of dealing in marijuana. The maintenance of the nuisance was therefore the vehicle by which the dealing offenses were effected. Conversely, the dealing-sales were the element needed to prove that the premises was used for selling.

For the reasons set forth in my separate opinion in *Riding v. State* (1988) 2d Dist., Ind.App., 527 N.E.2d 185, and because *Hall v. State* (1986) Ind., 493 N.E.2d 433, is compelling, I therefore dissent. I would reverse and remand with instructions to the trial court to vacate either the three dealing convictions or to vacate the common nuisance conviction.

---

**6.** Even were we to find some other basis for prohibiting "vindictive justice," the state presented unrefuted evidence that an earlier arrest would have jeopardized the ongoing drug investigation in the Fairmount area. Record at 218. There was no evidence the State's action was vindictive.