Tony MAYS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A01–0805–CR–240.

Court of Appeals of Indiana.

Feb. 26, 2009.

Publication Ordered May 21, 2009.

John A. Kessler II, Terre Haute, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Tony Mays ("Mays") was convicted in Vigo Superior Court of two counts of Class B felony dealing cocaine. He was sentenced to an aggregate term of eighteen years. Mays appeals and argues:

I. Whether the trial court abused its discretion in denying Mays's motion to disclose the identity of the confidential informant;

II. Whether the trial court abused its discretion when it admitted audiovisual evidence of the four controlled drug buys;

III. Whether the trial court abused its discretion when it allowed the jury to view the recordings of the drug buys during deliberations; and,

IV. Whether the search warrant was valid.

We affirm.

### Facts and Procedural History

In early 2007, Confidential Informant 702 ("CI 702") was arrested on a misdemeanor charge in Vigo County. CI 702 spoke with Detective Denzil Lewis ("Detective Lewis") about Mays. They agreed that in return for the State not filing the misdemeanor charge, CI 702 would cooperate with the narcotics investigation of Mays and that she would be paid cash for each controlled buy.

Prior to each of the four controlled buys, CI 702 was tested for drugs, found clean, searched, and given forty dollars to buy drugs. The first controlled "buy" occurred on March 29, 2007. Detective Lewis listened as CI 702 called Mays on Mays's cell phone. CI 702 asked for "something for stress." Mays replied, "Alright." Tr. p. 79, State's Vol. Ex. 2.

CI 702 was outfitted with a video/audio recording device that makes a digital recording, also known as the "Hawk." Detective Lewis had used this device hundreds of times and could not alter the recording. CI 702 was driven to within one-half block of Mays's location. She walked the rest of the way to Mays's location. After CI 702 met Mays, they spoke briefly. Mays then sold CI 702 .40 grams of cocaine for forty dollars. CI 702 returned to Detective Lewis and gave him the cocaine. Detective Lewis secured the recording.

On April 2, 2007, a second controlled buy occurred. Detective Lewis and CI 702 followed the same procedure as during the first controlled buy. Again, Mays sold CI 702 .40 grams of cocaine for forty dollars.

CI 702 returned and gave the cocaine to Detective Lewis and was searched. Detective Lewis secured the recording.

The third controlled buy occurred on April 24, 2007. Detective Lewis and CI 702 followed the same procedure as during the first controlled buy. CI 702 purchased 1.10 grams of cocaine in exchange for the buy money. CI 702 returned with the cocaine to Detective Lewis. Detective Lewis secured the recording.

The fourth controlled buy occurred on May 3, 2007. The same procedures were used during this buy as with the prior controlled buys. CI 702 met Mays at a motel in Terre Haute. CI 702 went to a room at that motel and knocked. She spoke with the occupants of the room as Mays prepared her cocaine. Mays sold .70 grams of cocaine for fifty dollars of buy money to CI 702. CI 702 returned to Detective Lewis with the cocaine. She was searched and Detective Lewis secured the recording.

Detective Lewis decided to arrest Mays based on the four controlled buys. Mays was arrested after he left the motel room. Detective Lewis then sought a search warrant for the motel room. After receiving the search warrant, the motel room was searched revealing the buy money, 32.6 grams of cocaine, baking soda, two firearms, and a digital scale.

The State charged Mays with one count of Class A felony dealing in cocaine, four counts of Class B felony dealing cocaine, and one count of Class B felony unlawful possession of a firearm by a serious violent felon. Prior to trial, Mays moved to suppress the evidence found in the motel room and for formal disclosure of the confidential informant's identity. The trial court denied both motions.

During the jury trial, the State presented the digital recordings of the four con-

trolled buys. The State did not call CI 702 as a witness. During jury deliberations, the jury asked to review the controlled buy recordings but did not have the means to do so. Mays objected to the jury's two requests to review the recordings, which the trial court overruled. The trial court decided to allow the jury to view the recordings in the same manner as viewed during trial, using the State's laptop with a projector. Mays objected to not being present during the viewing. After the trial court explained that the jury was actively deliberating, Mays did not object.

The jury returned guilty verdicts for two counts of Class B felony dealing cocaine but not on the one count of Class A felony dealing cocaine or the other count of Class B felony dealing cocaine. Prior to sentencing, Mays filed a motion to set aside the verdicts based upon the jury's use of the State's laptop to view the recordings. The State objected. After a hearing, the trial court denied the motion. The trial court sentenced Mays to an aggregate eighteen-year term. Mays now appeals.

### I. Confidential Informant Identity

 Mays first argues that the trial court improperly denied his motion to compel disclosure of the confidential informant's identity in light of the fact that CI 702 did not testify at trial and the recordings were admitted based on Detective Lewis's testimony. "The general policy is to prevent disclosure of an informant's identity unless the defendant can demonstrate that disclosure is relevant and helpful to his defense or is necessary for a fair trial." *Schlomer v. State*, 580 N.E.2d 950, 954 (Ind.1991). It is the defendant's burden to demonstrate the need for disclosure. *Id.* "[B]are speculation that the information may possibly prove useful" is not enough to justify the disclosure of a confidential informant's identity, and an

informant's identity shall not be disclosed "to permit 'a mere fishing expedition.'" *State v. Cook*, 582 N.E.2d 444, 446 (Ind.Ct. App.1991) (quoting *Dole v. Local 1942, et al.*, 870 F.2d 368, 373 (7th Cr.1989)).

Also, Mays must show that he did not know the identity of the informant. *See Allison v. State*, 527 N.E.2d 234, 237 (Ind. Ct.App.1988) ("Necessarily, the defendant also has the burden of showing that the identity of the informant is unknown to the defense."), *trans. denied.* As noted by the State, CI 702 knew Mays's cell phone number and location of his residence and they discussed mutual acquaintances. During the face-to-face transactions, CI 702 and Mays discussed CI 702's debt to Mays's brother. Because of this, we conclude that Mays has not shown that CI 702's identity was unknown to him. Therefore the trial court did not improperly deny his motion to compel disclosure of the confidential informant.

### II. Admission of Evidence

 Mays next argues that the trial court abused its discretion when it admitted audiovisual evidence without proper authentication or foundation. The admission and exclusion of evidence lies within the sound discretion of the trial court; therefore we review admission of testimony for abuse of that discretion. *State v. Lloyd*, 800 N.E.2d 196, 198 (Ind.Ct.App. 2003). Such an abuse occurs when the "decision is clearly against the logic and effect of the facts and circumstances." *Id.*

 Mays's assertion that in order to introduce the video, the State must have called CI 702 to testify that the video accurately represented what occurred is patently incorrect. Instead, pursuant to the "silent witness" theory, "videotapes may be admitted as substantive evidence, but 'there must be a strong showing of [the videotape's] authenticity and compe-

tency.'" *McHenry v. State,* 820 N.E.2d 124, 128 (Ind.2005) (quoting *Edwards v. State,* 762 N.E.2d 128, 136 (Ind.Ct.App. 2002), *trans. denied* ). In addition, there must be a showing that the videotape has not been altered. *See Edwards,* 762 N.E.2d at 136; *Bergner v. State,* 397 N.E.2d 1012, 1017 (Ind.Ct.App.1979) (discussing photographs). "In cases involving photographs [or videos] taken by automatic cameras ... there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera." *Kindred v. State,* 524 N.E.2d 279, 298 (Ind. 1988) (quoting *Bergner,* 397 N.E.2d at 1017). In regard to this last requirement, "the State is not required to exclude every reasonable possibility of tampering, but rather must only provide reasonable assurance that an exhibit has passed through various hands in an undisturbed condition." *Id.* at 298–99.

Here, Officer Lewis testified regarding the nature of the Hawk, that he personally prepared the Hawk for recording, that he personally took the Hawk and downloaded the video onto his computer and copied the video onto the CD introduced into evidence, that the video contained on the CD was consistent with what he knew to have taken place, and that he had no reason to believe that the CD had been altered or tampered with in any way. We conclude that the State laid a proper foundation for the admission of the video evidence. *See Kindred,* 524 N.E.2d at 298–99. The trial court did not abuse its discretion in admitting the audio-visual evidence.

### III. Jury Review of Evidence

 Mays argues that trial court erred when it allowed the jury to review evidence outside the presence of the defendant. Ind.Code section 34–36–1–6 (1999) provides:

If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case;

the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Mays contends that the jury's note reflected a disagreement among the jurors, thus triggering the provisions of Indiana Code section 34–36–1–6. We hold that Indiana Code section 34–36–1–6 does not apply here. Addressing the substantially similar predecessor statute to Indiana Code section 34–36–1–6, our supreme court held in *Bouye v. State,* 699 N.E.2d 620 (Ind.1998) that the provision applies only in cases where the jury explicitly indicates there has been a disagreement. Here, the jury's question was "Can we see the video of all transactions?" Tr. p. 373. The note evidences not disagreement, only a desire to see the video of the drug transactions. Therefore, the provisions of Indiana Code section 34–36–1–6 are not triggered.

 Since Indiana Code section 34–36–1–6 does not apply in this case, the decision to allow the jury to view the video is within the discretion of the trial court. *Stokes v. State,* 801 N.E.2d 1263, 1269 (Ind.Ct.App.2004), *trans. denied.* The trial court should consider three factors in deciding whether to permit the jury to take a copy of the exhibits to the jury room. *Thacker v. State,* 709 N.E.2d 3, 6 (Ind.1999). Those factors are: (1) whether the material will aid the jury in a proper consideration of the case; (2) whether any

party will be unduly prejudiced by submission of the material; and (3) whether the material may be subjected to improper use by the jury. *Id.; Goodrich v. Indiana Michigan Power Company*, 783 N.E.2d 793, 797–98 (Ind.Ct.App.2003).

In this case, the videotape was provided to the jury after the beginning of deliberations, and the trial court did not monitor the use of the video as suggested in Indiana Code section 34–36–1–6. Instead, the trial court gave the jury the video and a laptop computer to view the video while it deliberated. As in *Stokes*, we find that the trial court abused its discretion in allowing the jury to review the videotape in the jury room without monitoring its use.

 However, Indiana Trial Rule 61 (2003) states that: "No error ... in any ruling or order in anything done or omitted by the court or by any of the parties is ground for ... reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Mays has failed to show how or why the review of the videos unduly prejudiced his case or was subject to improper use by the jury. There was little risk that the jury would place undue weight on the videos because the video had already been played in open court. Tr. p. 79, 94–5, 106–7, 117.

Mays also argues that the use of the State's laptop computer by the jury to view the video was error. While the use of the State's laptop computer may have given an appearance of impropriety, Mays has failed to show that the use of the laptop computer was unduly prejudicial to his case or subject to improper use by the jury. He has offered only conjecture and speculation to support his allegations of jury impropriety.

The trial court committed harmless error in allowing the jury to review the transaction video on the State's laptop computer.

## IV. Validity of Search Warrant

 Mays lastly argues that the search warrant was invalid. However, our court does not "engage in discussions of moot questions or render advisory opinions." *Irwin v. State*, 744 N.E.2d 565, 568 (Ind. Ct.App.2001). The jury could not reach a verdict on Counts I and II. The search warrant and the evidence found as a result of that search formed the basis for Count I. While the State may retry Mays on Counts I and II, retrial is not a certainty. Any opinion offered as to the search warrant and the evidence obtained through that search warrant would be merely advisory and we therefore decline to address Mays's argument at this time.

### Conclusion

The trial court did not improperly deny Mays's motion to compel disclosure of the confidential informant's identity. The trial court did not abuse its discretion in admitting audio-visual evidence of drug transactions. The trial court committed harmless error in allowing the jury to review the audio-visual evidence using the State's laptop after deliberations began. The validity of the search warrant is not at issue in this appeal because the evidence collected as a result of the search warrant supported Count I upon which the jury could not reach a decision.

Affirmed.

BAILEY, J., and BARNES, J., concur.

### ORDER

On February 26, 2009, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publica-

tion. The Appellee State of Indiana, by counsel, has filed a Verified Motion for Publication of Memorandum Decision.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Verified Motion for Publication of Memorandum Decision is GRANTED, and this Court's opinion handed down in this cause on February 26, 2009, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

BAILEY, MATHIAS and BARNES, JJ., concur.