Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**NANCY A. McCASLIN**
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.W.S., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A04-1207-JV-373 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1204-JD-152

**March 8, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, J.W.S., appeals his adjudication as a juvenile delinquent for criminal gang activity, which would have been a Class D felony if committed by an adult, Ind. Code § 35-45-9-3.[1]

We affirm.

## ISSUES

J.W.S. raises two issues on appeal, which we restate as follows:

(1) Whether the juvenile court abused its discretion by admitting testimony on gang colors and insignia as well as surveillance video footage into evidence; and

(2) Whether there was sufficient evidence to support the juvenile court's true finding that J.W.S. committed criminal gang activity.

## FACTS AND PROCEDURAL HISTORY

During the 2011-2012 school year, C.W., a fifteen-year-old student at Northridge High School in Middlebury, Indiana, was approached by J.W.S., a sixteen-year-old student, to join a group called the North Side Jesters. Participation in the group required C.W. to avenge attacks against fellow members. Specifically, "if someone were to be assaulted," he "would have to aid them in getting out of being assaulted." (Transcript p.

---

[1] We held an oral argument in this case on February 19, 2013, at Wabash College in Crawfordsville, Indiana. We thank Wabash College for its hospitality in hosting the argument and counsel for their excellent advocacy.

22). Further, "if someone was in a fight, [C.W.] would have to help them if they were part of the group." (Tr. p. 22).

As a condition of membership, C.W. had to undergo an initiation ritual whereby members would physically attack him in brief intervals – a "beat in." (Tr. p. 13). On January 31, 2012, C.W. agreed to join the group and underwent the initiation ritual in a boys' restroom located next to the 300 hallway of the school. C.W. along with J.W.S. and other group members, including N.H., S.K., and A.M., entered the restroom together. J.W.S. and N.H. took turns hitting C.W. on the arm and chest for approximately thirty seconds. C.W. was permitted to block but not hit back. After time had expired, C.W. was admitted into the group. Two other students, B.D. and M.S., were in the restroom and witnessed the event. B.D. asked C.W. if he was alright and C.W. said he was. C.W. also told B.D. that the beating was part of an initiation.

School officials learned about the incident and began investigating. A security camera had been installed in front of the bathroom and captured C.W., J.W.S., and other students entering the restroom at the same time and exiting shortly thereafter. The day following C.W.'s initiation, B.D. was contacted by the school resource officer, Officer Jeremy Shotts (Officer Shotts). B.D. told Officer Shotts about the beat in. B.D. said that he saw C.W. get beaten by students who went "full on, both hands just punching him." (Tr. p. 31). Following B.D.'s meeting with Officer Shotts, B.D. encountered J.W.S. in the school library. J.W.S. accused B.D. of revealing the beat in and began pushing B.D. B.D. responded by punching J.W.S. in the face and was suspended as a result.

3

School officials later searched J.W.S.'s locker. Several graffiti-like drawings, including a hatchet bearing a caricature, diamonds, and a marijuana leaf were found in J.W.S.'s notebooks. The name Casper appeared on the notebooks. Assistant Principal Steven Troyer (Assistant Principal Troyer) interviewed J.W.S., who revealed his group membership, identified fellow members and their nicknames, and said that Casper was his nickname. Separately, in the chat room of online game, J.W.S. mentioned that he was "getting close to shooting [the] school officer, and that he wanted to beat up [S.K. and another North Side Jester member]." (Tr. p. 74).

On April 13, 2012, the State filed a delinquency petition alleging J.W.S. to be a delinquent child. The State claimed that J.W.S. had committed three acts, which would have been the following crimes, if committed by an adult: Count I, criminal gang recruitment within 1000 feet of a school, a Class C felony, I.C. § 35-45-9-5(b)(1); Count II, criminal gang activity, a Class D felony, I.C. § 35-45-9-3; and Count III, battery, a Class A misdemeanor, I.C. § 35-42-2-1(a).[2]

On June 20, 2012, the juvenile court held an evidentiary hearing. Over J.W.S.'s objection, C.W. testified about the North Side Jesters' colors and symbols. The juvenile court also admitted school surveillance video footage depicting J.W.S and other students entering and later exiting the boys' bathroom together. On July 2, 2012, the juvenile court entered a true finding on Counts II and III, criminal gang activity and battery, but acquitted J.W.S. on Count I, criminal gang recruitment. On July 3, 2012, the juvenile

---

[2] Count III entailed J.W.S.'s battery of B.D. in the school library. J.W.S. does not appeal this adjudication.

court held a dispositional hearing. It placed J.W.S. on probation and ordered him to undergo educational and support programs, complete forty hours of community service, have no contact with gang members, and delete his Facebook account.

J.W.S. now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Admission of Evidence*

We first address J.W.S.'s challenges to the admission of C.W.'s testimony and surveillance video footage. The juvenile court has broad discretion in ruling on the admissibility of evidence. *See C.C. v. State*, 826 N.E.2d 106, 110 (Ind. Ct. App. 2005), *trans. denied*. We will reverse only upon an abuse of that discretion. *Id*. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court. *See Berry v. State*, 967 N.E.2d 87, 90 (Ind. Ct. App. 2012).

J.W.S. claims that C.W.'s testimony on the gang's colors and insignia should have been excluded as inadmissible hearsay. The State replies that C.W.'s statements were based on personal knowledge. Further, even if admission of the foregoing evidence was improper, the State asserts any error was harmless because the evidence was cumulative of other evidence already properly admitted.

Hearsay is defined as an out-of-court statement offered in a judicial proceeding to prove the truth of the matter asserted therein. Ind. Evidence Rule 801(c). Evidence that comes from the personal knowledge of a witness is not hearsay. *Willoughby v. State*, 660

5

N.E.2d 570, 580 (Ind. 1996). Here, C.W. testified that the gang's colors were "red, white and black." (Tr. p. 17). He testified that the gang's symbols were a "[d]iamond and a [three]." (Tr. p. 18). C.W. testified that he was admitted as a member of the North Side Jesters and was taught the group's handshakes or hand symbols. We cannot conclude that his testimony was hearsay.

Furthermore, even if the testimony could be considered hearsay, the erroneous admission of inadmissible hearsay will not be cause for reversal where such evidence is merely cumulative in nature. *Weinberger v. Boyer*, 956 N.E.2d 1095 (Ind. Ct. App. 2011), *trans. denied*. Cumulative evidence proves a fact that is established by other evidence. *Davis v. State*, 456 N.E.2d 405, 409 (Ind. 1983). Here, two other former gang members testified as to the gang's colors. Accordingly, the juvenile court did not abuse its discretion in admitting C.W.'s testimony on the gang's colors and insignia.

Next, J.W.S. asserts that the State failed to provide a proper foundation for the admission of the surveillance video footage. The State argues that admission of the surveillance video footage was proper based on testimony establishing a reasonable assurance that it had not been tampered with. Videotapes may be admitted as substantive evidence, but there must be a strong showing of the videotape's authenticity and competency. *Mays v. State*, 907 N.E.2d 128, 131 (Ind. Ct. App. 2009). In addition, there must be a showing that the videotape has not been altered. *Id*. at 132. Further, in cases involving photographs or videos taken by automatic cameras, there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when

6

the photographs were taken, and the processing and chain of custody of the film after its removal from the camera. *Id*. Regarding the chain of custody, the State is not required to exclude every reasonable possibility of tampering, but rather must only provide reasonable assurance that an exhibit has passed through various hands in an undisturbed condition. *Id*.

Assistant Principal Troyer testified that the school had automatic surveillance cameras "throughout the building," including one pointed at the men's restroom located next to the school's 300 hallway. (Tr. p. 82). Along with Officer Shotts, he reviewed footage from January 31, 2012, which depicted a group of boys, including C.W., J.W.S., N.H., and S.K. heading into the bathroom. B.D. and another student also entered the restroom. Assistant Principal Troyer testified that the security camera was in proper working order at the time and that the video had not been altered. He stated that Officer Shotts took the footage and "was able to clip [them] down into manageable pieces" of 10 to 15 second clips "and put them on a CD, or DVD." (Tr. p. 84). He watched Officer Shotts prepare two CD's and received one. The State introduced a CD containing the clips and Assistant Principal Troyer identified the CD as containing the video footage he watched and which was "unaltered other than narrowing down the seconds." (Tr. p. 85). Although the CD introduced at the hearing was not the CD he received from Officer Shotts, Assistant Principal Troyer testified that the label on the CD matched the labeling on the CD he received from Officer Shotts. Based on the foregoing, we conclude that the

State laid a proper foundation for the admission of the video evidence. *See id.* The juvenile court did not abuse its discretion in admitting the surveillance video footage.

## II. *Sufficiency of the Evidence*

J.W.S. argues that there is insufficient evidence to support the juvenile court's true finding that he committed criminal gang activity. Specifically, he contends that the North Side Jesters was not a criminal gang and therefore he could not have committed criminal gang activity. The State argues that the evidence supports J.W.S.'s adjudication because the evidence shows that the group was a criminal gang in light of its purpose, its initiation ritual, and its membership obligations. As J.W.S. was the group's leader and conducted its initiation rituals, the State asserts that the evidence proves beyond a reasonable doubt that J.W.S. committed criminal gang activity.

When this court reviews sufficiency of the evidence claims with respect to juvenile adjudications, we neither reweigh the evidence nor judge the credibility of the witnesses. *H.J. v. State*, 746 N.E.2d 400, 402 (Ind. Ct. App. 2001). We consider only the evidence most favorable to the judgment and the reasonable inferences therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* The State is required to prove, beyond a reasonable doubt, that the juvenile committed the charged act. *Id.*

A criminal gang is defined by statute as:

[…] a group with at least three (3) members that specifically:

(1) either:

8

> (A) promotes, sponsors, or assists in; or
> (B) participates in; or

> (2) requires as a condition of membership or continued membership;

> the commission of a felony or an act that would be a felony if committed by an adult or the offense of battery ([I.C. §] 35-42-2-1).

I.C. § 35-45-9-1. A person who knowingly or intentionally actively participates in a criminal gang commits criminal gang activity, a Class D felony. I.C. § 35-45-9-3. To prove that J.W.S. committed criminal gang activity, the State must show he "(1) is an active member of a [criminal gang]; (2) has knowledge of the group's criminal advocacy, and (3) has a specific intent to further the group's criminal goals." *Trice v. State*, 693 N.E.2d 649, 651 (Ind. Ct. App. 1998). The latter element requires proof of a nexus between furthering the goals of the criminal gang and the charged crime. *See Robles v. State*, 758 N.E.2d 581, 585 (Ind. Ct. App. 2001), *trans. denied*.

J.W.S. argues that the "purpose of the group […] was to stand up for each other when members of the group were bullied." (Appellant's Br. p. 13). Further, he contends that because C.W. consented to the initiation ritual, the beat in administered by J.W.S. and N.H. did not constitute a battery. Accordingly, J.W.S. asserts that the North Side Jesters was not a criminal gang. The State contends that it met its burden of proof because the North Side Jesters required its members to participate in batteries.

Battery is the knowing or intentional touching of another person in a rude, insolent, or angry manner. I.C. § 35-42-1-1(a). J.W.S. claims that the beat in did not constitute a battery because C.W. consented. Consent is not a defense to battery in

certain circumstances. *See Helton v. State*, 624 N.E.2d 499, 515 (Ind. Ct. App. 1993), *cert. denied*, 520 U.S. 1119 (1997). Specifically, consent is not a defense to battery:

> (1) where the defendant goes beyond acts consented to and beats to death the victim who consented only to the defendant's execution of the organization's initiation ritual of being struck in the stomach until he passed out; (2) where it is against public policy to permit the conduct or resulting harm even though it is consented to, as where there are no sexual overtones and the battery is a severe one which involves a breach of the public peace as well as an invasion of the victim's physical security; (3) where consent is ineffective, as where it is obtained by fraud or from one lacking legal capacity to consent; (4) where a deadly weapon is employed; (5) where death results; and (6) where the battery is atrocious or aggravated.

*Id*. at 514.

In the gang initiation context, the supreme court has held that blows to the stomach resulting in death during a prison gang initiation constituted an aggravated battery. *See Jaske v. State*, 539 N.E.2d 14, 18 (Ind. 1989). We have held that "striking someone continuously in an area which is susceptible of injury as severe as permanent brain damage is an atrocious, aggravated battery for which consent is no defense." *Helton*, 624 N.E.2d at 515. *Helton* involved a gang initiation conducted by teenagers whereby the initiate was beaten in the head and the chest. *See id*. Given the significance of the areas attacked, the *Helton* court concluded that the consent exception did not apply. *See id*. at 514-15.

*Helton* did not discuss whether the initiate had capacity to consent to the initiation because the record did not include the age of the initiate. *See id*. at 515 n. 24. However, *Helton* did note that it is "against public policy to permit the conduct or resulting harm"

10

even with consent. *Id.* at 514. "Thus, a child cannot consent to hazing, a gang member cannot consent to an initiation beating, and an individual cannot consent to being shot with a pistol." *State v. Hiott*, 987 P.2d 135, 136-37 (Wash. App. 1999). While beating here was limited and could not be considered equivalent to those initiation rituals in which traumatic injury or death result, C.W.'s age precluded his consent. Based upon these circumstances and facts, we conclude that the North Side Jesters constituted a criminal gang under I.C. § 35-45-9-1.

As the North Side Jesters constituted a criminal gang, we have little difficulty concluding that J.W.S. committed criminal gang activity. J.W.S. was the acknowledged and confessed leader of the North Side Jesters. J.W.S. invited C.W. to join the gang and was one of two attackers during the initiation ritual, which the gang required as a condition of membership. J.W.S. beat C.W. about the arms and his chest, throwing hooks and an occasional elbow. Thus, the State provided evidence sufficient to adjudicate J.W.S. as a delinquent for committing criminal gang activity.

## CONCLUSION

Based on the foregoing, we conclude that the juvenile court did not abuse its discretion in admitting testimony regarding gang colors and symbols as well as surveillance video footage. Furthermore, we conclude that J.W.S.'s delinquency adjudication was supported by sufficient evidence beyond a reasonable doubt.

Affirmed.

BAKER, J. and ROBB, C. J. concur

11