# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEROME SHECKLES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.   10A04-1405-CR-204 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff, | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Jerome F. Jacobi, Judge
Cause No. 10C02-1208-FA-068

**January 9, 2015**

**OPINION – FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Jerome Sheckles ("Sheckles") was convicted of Dealing in Cocaine, as a Class A felony,[1] and was adjudicated to be a Habitual Substance Offender.[2] He now appeals.

We affirm.

**Issues**

Sheckles raises three issues for our review. We restate these as four issues:

I. Whether Sheckles was deprived of his right to a speedy trial under Criminal Rule 4(C);

II. Whether the trial court erred when it declined Sheckles's request to require the State to identify a confidential informant;

III. Whether Sheckles's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution were violated by certain evidentiary rulings; and

IV. Whether the State laid an adequate foundation under the "silent witness theory" for the admission into evidence of a video recording.

**Facts and Procedural History**

On April 20, 2012, Jeffersonville Police Department Detective Sergeant Dan Lawhorn ("Detective Lawhorn") was working with a confidential informant during an investigation of drug activity near a housing complex in Jeffersonville. After searching the informant and wiring the informant with surveillance equipment, including audio and video recorders, Detective Lawhorn drove the informant to a shopping center, where the

---

[1] Ind. Code § 35-48-4-1(b)(3)(B)(iii) (West 2013). All statutory citations refer to the version of the Indiana Code in effect at the time of trial unless otherwise indicated herein.

[2] I.C. § 35-50-2-10.

informant had agreed to attempt to purchase cocaine from individuals previously unknown to the informant.[3] Other officers monitored the scene.

The informant approached two men who were standing together; one of these men was Sheckles. The informant purchased .17 grams of cocaine from Sheckles and the other man. In the course of investigations later in the year, police arrested Sheckles.

On August 27, 2012, Sheckles was charged with Dealing in Cocaine and Possession of Cocaine, as a Class B felony.[4] The State also alleged Sheckles to be a Habitual Substance Offender.[5]

Sheckles's case had originally been set for trial on December 11, 2012; the trial date came and went, but no trial occurred. On May 29, 2013, Sheckles and the State agreed to a trial date of September 17, 2013 in this case, which was taken in order to coordinate trials in this case and another matter pending against Sheckles. On August 15, 2013, as a result of a scheduling conflict, the trial court sua sponte reset the case for a trial on October 15, 2013.

On September 4, 2013, Sheckles filed a motion to continue the trial, and a trial date of January 7, 2014, was set.

---

[3] Detective Lawhorn referred to this type of transaction as a "cold buy." (Tr. 248.)

[4] I.C. § 35-48-4-6(b)(2)(B)(iii).

[5] I.C. § 35-50-2-10.

No trial was conducted on January 7, 2014. On January 22, 2014, Sheckles declined a plea agreement and the State moved the court to set the case for trial. On January 27, 2014, Sheckles filed a motion seeking discharge in this case, contending that his speedy trial rights had been violated.[6]

On February 6, 2014, the trial court conducted a hearing on Sheckles's motion for discharge and denied the motion.

On February 11, 2014, the trial court conducted pretrial hearings on motions filed by the parties. Among the motions addressed was a motion Sheckles filed seeking the identity of the confidential informant. The trial court denied this motion.

A bifurcated jury trial was conducted on February 11 and 12, 2014, addressing first the substantive charges against Sheckles, and subsequently the Habitual Substance Offender allegation. At the conclusion of the first phase of the trial, the jury found Sheckles guilty of both Dealing in Cocaine and Possession of Cocaine, as charged. During the second phase of the trial, the jury found as true the State's allegation that Sheckles was a Habitual Substance Offender.

On April 4, 2014, a sentencing hearing was conducted. At the conclusion of the hearing, the trial court entered judgment of conviction against Sheckles for Dealing in Cocaine, as a Class A felony; merged the guilty verdict for Possession of Cocaine into the conviction for Dealing in Cocaine; and adjudicated Sheckles a Habitual Substance

---

[6] Sheckles, represented by counsel throughout these proceedings, had previously filed handwritten pro se motions for a speedy trial.

4

Offender. The court sentenced Sheckles to thirty-five years imprisonment for Dealing in Cocaine, enhanced by five years as a result of Sheckles's Habitual Substance Offender status.

This appeal ensued.

**Discussion and Decision**

Speedy Trial

Sheckles first contends that the trial court erred when it denied his motion for discharge pursuant to our speedy trial rules.

Criminal Rule 4 provides, in relevant part:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule.

Ind. Crim. Rule 4(C). Where a defendant moves for and obtains a continuance, or when a delay in trial is caused by the defendant, "any time limitation … shall be extended by the amount of the resulting period of such delay caused thereby." Crim. R. 4(F).

Criminal Rule 4 implements a defendant's constitutional right to a speedy trial. Fuller v. State, 995 N.E.2d 661, 664 (Ind. Ct. App. 2013), trans. denied. In addition to defendant-requested continuances functioning to extend the period in which a defendant must be tried, see Crim. R. 4(F), our supreme court has held that when a trial court

5

schedules trial to begin outside the scope of the one-year period provided for in Rule 4(C), a defendant must object to that setting or waive right to speedy trial under the rule for the ensuing delay. Bostic v. State, 980 N.E.2d 335, 340 (Ind. Ct. App. 2012) (quoting State ex rel. Bramley v. Tipton Cir. Ct., 835 N.E.2d 479, 481 (Ind. 2005)). Thus, in Bostic, this Court held that continuances and the absence of objections from the defendant to court-set trial dates functioned to defeat the defendant's claim that he was denied a speedy trial. Id. at 340.

We review appeals from the denial of a motion for discharge under Criminal Rule 4 for clear error.

> Where a trial court makes a factual finding … based on disputed facts … we neither reweigh the evidence nor determine the credibility of witnesses. We consider only the probative evidence and reasonable inferences supporting the judgment and reverse only on a showing of clear error. Clear error is that which leaves us with a definite and firm conviction that a mistake has been made.

Austin v. State, 997 N.E.2d 1027, 1040 (Ind. 2013) (citations and quotations omitted).

Sheckles's initial hearing in the instant case occurred on September 5, 2012. An initial trial date of December 11, 2012 came and went, and the case proceeded with no trial date. On May 29, 2013, Sheckles and the State conducted a pretrial conference because "[Sheckles] wanted to coordinate the dates in this case with Mr. Sheckles [sic] other pending case." (Tr. at 15.) As a result of this conference, a trial date of September 17, 2013 was set. On August 15, 2013, the trial court sua sponte ordered the trial continued to October 15, 2013, due to calendar conflicts related to a judicial conference. On September

6

4, 2013, Sheckles himself moved for a new trial date due to ongoing plea agreement negotiations. The trial was consequently rescheduled to January 7, 2014 but no trial was conducted on that date.

On January 22, 2014, Sheckles rejected a plea agreement and the State moved the court to set a trial date. The court set the case for trial on February 11, 2013. On January 27, 2014, Sheckles filed his motion for discharge. The trial court subsequently denied the motion, finding that there was "clear evidence of … acquiescence in the adjusting of dates. Which was done to help everyone, as it says in Rule 4." (Tr. at 28.)

As best we can discern, Sheckles appears to argue that although he acquiesced to the September 17, 2013 trial date, which came about as a result of his participation in the May 29, 2013 pretrial conference, he was entitled to discharge on January 27, 2014 because at the time of the May 29, 2013 pretrial conference, there was no established trial date from which to seek a continuance. Rather, the first trial date of December 11, 2012 had lapsed and no subsequent date had been set. Sheckles appears to argue that though he acquiesced to a delay from May 29, 2013 to September 17, 2013, and again as the result of two continuances from September 17, 2013 to January 7, 2014, he was entitled to discharge on January 7, 2014.

Sheckles appears to argue that absent a fixed trial date prior to May 29, 2013, no portion of the delay resulting from the May 29, 2013 to September 17, 2013 interlude may be attributed to him, because the trial date set as a result of the May 2013 pretrial conference was not the result of a continuance. Yet the language of Rules 4(C) and 4(F) provide that

7

a delay caused by the defendant—distinct from any form or continuance—is among the bases upon which discharge may be denied when a defendant has not been brought to trial within the Rule 4(C) one-year period. Acquiescence to a trial date beyond the one-year period of Rule 4(C) is among those delays that may be attributed to the Defendant, and Sheckles consistently acknowledges his acquiescence. Further, two continuances were entered between May 29, 2013 and January 7, 2014; one of these, continuing the trial date from October 15, 2013 to January 7, 2014, was the result of Sheckles's request.

Despite this, Sheckles contends that his "claim for relief was given new life when the State did not proceed with his trial on January 7, 2014." (Appellant's Br. at 13.) But he does not directly challenge the trial court's finding of his acquiescence, nor does he deny that one of the continuances subsequent to the planned September 17, 2013 trial date was attributable to him. It is true that Sheckles is not estopped from asserting his Criminal Rule 4 speedy trial rights as against the State. See Raber v. State, 622 N.E.2d 541, 545 (Ind. Ct. App. 1993), trans. denied, abrogated on other grounds, Clark v. State, 659 N.E.2d 548 (Ind. 1995). But lack of estoppel alone is not a sufficient basis from which Sheckles may obtain the relief he seeks; he must still establish his entitlement to discharge. Clark, 659 N.E.2d at 551. And the simple lack of a trial date at the points in time during which Sheckles's case appears to have "fallen off the docket" does not by itself constitute a basis for discharge.

Sheckles has failed to establish any basis upon which we can conclude that the trial court erred when it denied his motion for discharge. We accordingly decline to disrupt the trial court's order on that motion.

Confidential Informant Identity

Sheckles next contends that the trial court erred when it did not require the State to reveal the identity of the confidential informant who conducted the controlled buy which led to Sheckles's arrest.

It has long been held in Indiana that "[t]he general policy is to prevent disclosure of an informant's identity unless the defendant can demonstrate that disclosure is relevant and helpful to his defense or is necessary for a fair trial." Mays v. State, 907 N.E.2d 128, 131 (Ind. Ct. App. 2009) (quoting Schlomer v. State, 580 N.E.2d 950, 954 (Ind. 1991)), trans. denied. The defendant seeking disclosure must bear the burden of proving its necessity. Id. Speculation that disclosure of the informant's identity may be useful is insufficient to meet this burden, and "an informant's identity shall not be disclosed to permit a mere fishing expedition." Id. (citations and quotations omitted). And as with other evidentiary rulings, we will not reverse where any claimed error did not interfere with the substantive rights of a party. See Ind. Trial Rule 61 (affording no relief on appeal for harmless error).

Sheckles contends the trial court should have ordered disclosure of the informant's identity so that he could elicit testimony concerning the role of the informant in the controlled buy. Sheckles contends that the informant characterized the cocaine purchased from Sheckles as "a big ol [sic] f---ing chunk" (Tr. at 236), but that the amount of cocaine

9

recovered was .17 grams. Sheckles contends this amount was small enough to "easily be hidden from an officer conducting a search of the informant" (Appellant's Br. at 16), and "would be impossible to characterize … as a 'big chunk.'" (Appellant's Br. at 17.) Thus, it appears that Sheckles would argue that he should have been able to learn the informant's identity in order to examine the informant concerning his role in the controlled buy and the amount of drugs the informant obtained from Sheckles.

Our review of the record, including the transcription of statements recorded by police during the controlled buy, reveals that the informant said something about a "big … chunk." (Tr. at 236.) We cannot, however, discern in context whether the informant was requesting a large amount of cocaine, or was receiving a large amount of cocaine; Sheckles contends the latter was the case. Moreover, as the State observes, law enforcement officers searched Sheckles before and after the controlled buy. Sheckles had the opportunity and did cross-examine each of these officers concerning their role and the informant's role in the controlled buy that led to Sheckles's arrest. Sheckles's arguments are of the speculative type disfavored by Indiana's general policy preventing disclosure of an informant's identity, and fail to establish how Sheckles was prejudiced by the trial court's refusal to order disclosure of the confidential informant's identity. We accordingly affirm the trial court's denial of Sheckles's request for the confidential informant's identity with respect to Sheckles's claimed need to further ascertain the informant's role in the controlled buy.

We turn now to Sheckles's several contentions that the trial court's evidentiary rulings violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution, which provides in relevant part, "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him."

We review rulings on the admissibility of evidence for an abuse of discretion. Vaughn v. State, 13 N.E.3d 873, 879 (Ind. Ct. App. 2014), trans. denied.  A trial court's decision is an abuse of discretion when the decision is clearly against the logic and effect of the facts and circumstances before the court.  Id.  Even then, however, we will not reverse the judgment if the court's ruling was harmless error.  Id.

*Confidential Informant*

Along with his argument that the confidential informant's identity should have been disclosed under Indiana law, Sheckles contends that the trial court's denial of his request to identify the confidential informant violated his confrontation rights.  Specifically, he contends that the right of confrontation "demands that this Court prohibit the State from hiding a confidential informant from the exposure and insight that are only provided through the crucible of confrontation and cross examination."  (Appellant's Br. at 17.)  Beyond this bald assertion, however, Sheckles fails to develop this argument.  We accordingly conclude that he has waived for purposes of appellate review any contention that the trial court's denial of his request for the informant's identity violated his confrontation rights under the Sixth Amendment to the Constitution.  See Ind. Appellate

11

Rule 46(A)(8)(a) (requiring cogent argumentation and reference to applicable law and the record). We accordingly decline to reverse the trial court's decision not to require the State to identify the confidential informant.

*Video Recording*

Sheckles further contends that the trial court abused its discretion when it admitted into evidence the video recording of the controlled buy, because admission into evidence of that recording violates his rights under the Confrontation Clause. Sheckles acknowledges the numerous rulings of this Court that such recordings are not hearsay, let alone the type of testimonial hearsay subject to the constitutional requirements of confrontation. Rather, Sheckles contends that the State's reliance at trial upon the "silent witness theory" for admissibility of the video must yield to changes in the law of confrontation.

The silent witness theory, as first adopted by this Court, permits the admission of photographs as substantive evidence, so long as that evidence is also relevant. Bergner v. State, 397 N.E.2d 1012, 1014-15 (Ind. Ct. App. 1979).[7] Addressing solely the question of foundation, the Bergner Court hesitated to set forth "extensive, absolute foundation requirements," and instead required a "strong showing of the photograph's competency and authenticity." Id. at 1017. Thus, the Bergner Court warned against the problems of

---

[7] The Bergner Court observed that "some Indiana cases require the photographs aid jurors' understanding of other evidence," but expressed skepticism that this was necessary for admission in all cases. Bergner, 397 N.E.2d at 1015.

distortion of images and the possibility of alteration of images in a manner that misrepresents the images taken, and opined that where images were taken by automatic devices, "there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera." Id. The silent witness theory has continued in use since its adoption by Indiana courts in 1979, and has since been extended to the use of video recordings. See, e.g., Mays, 907 N.E.2d at 131-32.

Here, Sheckles challenges the ongoing propriety of Bergner's adoption of the silent witness theory in light of Supreme Court jurisprudence since 2004 concerning the Confrontation Clause of the United States Constitution; he refers to the line of cases beginning with Crawford v. Washington, 541 U.S. 36 (2004). Sheckles contends that Bergner and its progeny—and with them, the silent witness theory—were implicitly overruled by Crawford. The Crawford Court rejected as violating the Confrontation Clause testimonial hearsay which, though otherwise admissible under the rules of hearsay, nevertheless was introduced into evidence in criminal prosecutions without an opportunity for cross-examination of the declarant by the defendant. Id. at 53-59. In particular, the Crawford Court rejected prior case law that permitted the admission of testimonial hearsay that "falls under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" Id. at 60 (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980)).

Sheckles identifies as rooted in the same doctrine, and thus subject to the same weaknesses, the "particularized guarantees of trustworthiness" of Ohio v. Roberts and the

13

foundation requirements of <u>Bergner</u>. Sheckles's argument does little more than attempt to equate the two lines of cases, and provides little further analysis. His claim, then, is waived for appellate review. <u>See</u> App. R. 46(A)(8)(a).

We note, however, that the <u>Bergner</u> Court expressly addressed the confrontation concerns associated with the admissibility of photographic (and, later, video) evidence, by requiring that a proper foundation be laid for admission of the photographic or video evidence, which in turn affords a defendant the opportunity to conduct cross-examination before the photographs or video records may be admitted into evidence. <u>Bergner</u>, 397 N.E.2d at 1018. That is, the <u>Bergner</u> Court built into the requirements of the silent witness theory the core confrontation elements the Supreme Court would later hold were required for the admission of laboratory reports and other testimonial materials. <u>See, e.g.</u>, <u>Melendez-Diaz v. Mass.</u>, 557 U.S. 305, 317-19 (2009) (discussing the constitutional requirement of cross-examination even for forensic lab tests that might otherwise be deemed to have the <u>Roberts</u> "particularized guarantees of trustworthiness"). We cannot, then, conclude that the Supreme Court's <u>Crawford</u> lines of cases have abrogated or otherwise undercut <u>Bergner</u> and its progeny.

We find no basis upon which to conclude under the Confrontation Clause that the trial court abused its discretion when it admitted the video recording into evidence. We therefore decline to reverse the trial court on those grounds.

Admissibility of the Video under the Silent Witness Theory

We turn to the last issue Sheckles presents on review, whether the State laid an adequate foundation for the admission of the video of the controlled buy under the requirements of the silent witness theory.

Sheckles's argument on this point is that the testimony of Detective Lawhorn was insufficient to lay a foundation as to the authenticity requirements set forth by Bergner. Sheckles acknowledges that Detective Lawhorn testified concerning the storage and preparation of the recording device, the successful use of the device in the controlled buy, and preservation of the video recording obtained from the device. However, Sheckles contends that this was insufficient because there was no explanation of "how the device actually worked;" the media upon which the recording was initially preserved; and whether there was opportunity for tampering with the recording at some point during the transfer of the video footage to Detective Lawhorn's computer, the evidence bin, and a secured location within the Jeffersonville Police Department. (Appellant's Br. at 20.)

Simply put, Sheckles's argument on appeal amounts to a request that we second-guess the trial court's assessment of Detective Lawhorn's testimony as to the authenticity of the recording and the chain of custody of the media containing the video. We decline to do so, as Sheckles's assertions fail to establish that the trial court's decision was clearly against the logic and effect of the facts and circumstances before it during the trial. See Vaughn v. State, 13 N.E.3d at 879. We find no abuse of discretion in the admission of the

15

video recording under the silent witness theory, and accordingly decline to reverse the trial court.

## Conclusion

Sheckles was not deprived of his right to a speedy trial under Criminal Rule 4(C). The trial court did not err when it denied Sheckles's request for disclosure of the confidential informant's identity. Sheckles's confrontation rights were not violated. The trial court did not abuse its discretion when it admitted into evidence the video recording of the controlled buy.

Affirmed.

ROBB, J., and BROWN, J., concur.